# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 45662-1-II |
| Respondent, | |
| v. | |
| MATTHEW DELANO GIPSON, | PART PUBLISHED OPINION |
| Appellant. | |

LEE, J. – Matthew Delano Gipson appeals his convictions for two counts of third degree assault and one count of attempting to disarm a police officer. Gipson also appeals his exceptional sentence, which is based on the aggravating factor that he committed one of the assaults against a public official in retaliation for the official's performance of his duties to the criminal justice system. Gipson argues that (1) the trial court violated his constitutional rights to confront adverse witnesses and to present a defense by restricting his cross-examination of several State witnesses, and (2) the "public official" aggravator does not apply to an assault of a law enforcement officer.

In the published portion of this opinion, we hold that the trial court erred in imposing an exceptional sentence because a law enforcement officer is not a public official under the exceptional sentencing provisions of the Sentencing Reform Act of 1981 (SRA), chapter 9.94A RCW. Although this issue is moot because Gipson has served his sentence, we address its merits

because it is an issue of continuing and public interest that is likely to recur.[1]  In the unpublished

portion of the opinion, we hold that the trial court did not violate Gipson's right to confront adverse

witnesses or to present a defense.[2]  The trial court properly limited Gipson's cross-examination of

the State's witnesses to relevant evidence that fell within the scope of their direct examinations

and Gipson introduced most of the evidence excluded on cross-examination during his case in

chief.  We affirm the convictions.

FACTS

After a fight broke out in the women's bathroom in a crowded Port Orchard tavern, the

police were called.  William Bentley, the bouncer, detained Alicia Maxwell and turned her over to

the police.  Maxwell's boyfriend, George Fortin, became upset, and Officers Erik Wofford, Josh

Horsley, and Steven Morrison detained him as well.

Gipson was a close friend of Fortin's and went into a rage when he saw Fortin being

handcuffed.  Bentley tried to calm him, and Officer Wofford repeatedly told Gipson to stop yelling

and to leave.  When Gipson instead addressed Officer Wofford directly and came toward him,

Officer Wofford told Gipson that he was under arrest.

Officers Wofford and Horsley tried to handcuff Gipson, but Gipson resisted.  Officer

Wofford took Gipson to the ground, and Gipson spun around to face the officer.  Gipson had his

fists clenched and, according to Officer Wofford, punched the officer in the face.  When Officer

---

[1] Gipson was released from prison before the appellant's brief was filed on November 19, 2014, and completed his community custody term on October 6, 2015.

[2] Gipson's appeal of his convictions is not moot because of the "adverse collateral legal consequences" that follow Gipson's convictions.  *Sibron v. New York*, 392 U.S. 40, 55, 88 S. Ct. 1889, 20 L. Ed. 2d 917 (1968).

Horsley intervened, Gipson tried to punch him as well. Gipson then reached for Officer Wofford's gun. Officer Wofford yelled for help, and Officer Morrison used his Taser on Gipson until the officers could handcuff him.

The State charged Gipson with two counts of third degree assault, based on his altercations with Officers Wofford and Horsley, and with attempting to disarm a police officer. The information alleged that the assault on Officer Wofford was aggravated by the fact that Gipson committed it against a public official in retaliation for the official's performance of his duty in the criminal justice system.

The jury found Gipson guilty as charged. The jury also found by special verdict that in assaulting Officer Wofford, Gipson retaliated against a public official performing his duties on behalf of the criminal justice system.

At sentencing, the defense argued that there was no legal basis for an exceptional sentence, but the trial court disagreed. The trial court imposed an exceptional sentence of 16 months on count I and ran the other standard range sentences concurrently. Gipson appeals his exceptional sentence.

## ANALYSIS

Gipson argues that the trial court erred in imposing an exceptional sentence on count I, the assault against Officer Wofford. We agree.

We note initially that Gipson has served his sentence and the accompanying term of community custody; therefore, this issue is moot. *See State v. Ross*, 152 Wn.2d 220, 228, 95 P.3d 1225 (2004) (case is moot if court can no longer provide meaningful relief). But if a case presents an issue of continuing and public interest that is likely to recur, we may reach its merits to provide

3

guidance to lower courts. *State v. Rodriguez*, 183 Wn. App. 947, 952, 335 P.3d 448 (2014), *review denied*, 182 Wn.2d 1022 (2015). There is a continuing and substantial public interest in ensuring that aggravated exceptional sentences are legally justified. *See* RCW 9.94A.585(4) (setting forth statutory scheme for appellate review of exceptional sentences). Because this issue is likely to recur, we address its merits to provide guidance.

The trial court imposed an exceptional sentence after the jury found that the "public official" aggravator in RCW 9.94A.535(3)(x) was satisfied. The issue here is whether a law enforcement officer is a public official under RCW 9.94A.535(3)(x). We review this question of law de novo. *State v. Womac*, 160 Wn.2d 643, 649, 160 P.3d 40 (2007).

Under RCW 9.94A.535(3)(x), a sentence above the standard range is justified if "[t]he defendant committed the offense against a public official or officer of the court in retaliation of the public official's performance of his or her duty to the criminal justice system." The SRA does not define the term "public official," but the comment to the pattern jury instruction for the "public official" aggravator cites the definition of "public officer" in the criminal code. 11A WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 300.33 cmt. at 747 (3d ed. 2008) (WPIC). The criminal code defines a "public officer" as

> a person holding office under a city, county, or state government, or the federal government who performs a public function and in so doing is vested with the exercise of some sovereign power of government, and includes all assistants, deputies, clerks, and employees of any public officer and all persons lawfully exercising or assuming to exercise any of the powers or duties of a public officer.

RCW 9A.04.110(13).

A separate definition in the criminal code refers to law enforcement officers. RCW 9A.04.110(15) defines a "peace officer" as "a duly appointed city, county, or state law enforcement officer." The comment to the pattern instruction for the "public official" aggravator does not cite this definition.

Gipson argues that the express inclusion of law enforcement officers within the definition of peace officers means that law enforcement officers are not public officers or public officials. *See State v. Jackson*, 137 Wn.2d 712, 724, 976 P.2d 1229 (1999) (where legislature uses certain statutory language in one instance and different language in another, there is a difference in legislative intent). The fact that a separate aggravator expressly refers to law enforcement officers supports Gipson's argument.

RCW 9.94A.535(3)(v) allows a trial court to impose an exceptional sentence if the jury finds that

> [t]he offense was committed against a law enforcement officer who was performing his or her official duties at the time of the offense, the offender knew that the victim was a law enforcement officer, and the victim's status as a law enforcement officer is not an element of the offense.

The comment to the pattern instruction for this "law enforcement" aggravator explains that it was designed to codify existing common law aggravating factors. WPIC 300.31 cmt. at 744. "Under the common law, this aggravating circumstance supports an exceptional sentence in assault and attempted homicide cases in which the victim's status as a police officer is not already an element that increases the severity of the crime." *Id.*

In this case, the "law enforcement" aggravator does not apply because Officer Wofford's status as a police officer is an element of the third degree assault charge. Clerk's Papers (CP) at

90; *see State v. Ferguson*, 142 Wn.2d 631, 647-48, 15 P.3d 1271 (2001) (exceptional sentence is not justified by reference to facts that constitute elements of offense). We are persuaded that Officer Wofford's status as a police officer also renders the "public official" aggravator inapplicable to Gipson's offense. Here again, the legislature's use of different language in RCW 9.94A.535(3)(v) and (x) shows that the legislature intended these aggravators to apply to different categories of people. Because neither the criminal code nor the SRA supports the trial court's reasoning that law enforcement officers are public officials to which the aggravator in RCW 9.94A.535(3)(x) applies, the trial court erred in imposing an exceptional sentence based on the public official aggravator.

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record in accordance with RCW 2.06.040, it is so ordered.

## ADDITIONAL FACTS

Before trial, the State moved to exclude, on grounds of relevancy, any reference to its decision not to charge Maxwell and any reference to the events that preceded Gipson's altercation with Officer Wofford. The defense responded that it should be allowed to explore all of the facts explaining why Gipson acted as he did, starting with the initial bathroom fight. "[O]ur theory is defense of an unlawful arrest." 1 Report of Proceedings (RP) at 85. The trial court ruled that Gipson could not argue that he resisted an unlawful arrest or acted in self-defense without an offer of proof.

The next morning, defense counsel explained that he would not be arguing that Gipson acted in self-defense or that he resisted an unlawful arrest. Defense counsel nonetheless began his

opening statement by referring to Maxwell's detention and to Fortin's reaction. The trial court overruled the State's objection but reminded defense counsel to keep the limitations of the evidence in mind. When defense counsel then argued to the jury that the police were out of line in detaining Maxwell, the trial court excused the jury to consider the State's objection. After considerable discussion, defense counsel again assured the trial court that he had no intention of exploring the lawfulness of Gipson's arrest. Defense counsel nonetheless made additional references to the officers' overreaction to the events at the tavern before completing his opening statement.

Bentley testified about handing Maxwell over to the police and about Fortin's detention. He described Gipson's reaction and the ensuing struggle between Gipson and Officer Wofford. Bentley also testified that he saw Gipson's arms "flying" into the officer and that he also saw Gipson's hand on Officer Wofford's holster. 2 RP at 170. He then saw another officer use his Taser on Gipson. The defense cross-examined Bentley about Maxwell's detention, Fortin's reaction, and the details of the altercation between Gipson and Officer Wofford.

Officer Wofford testified that after he responded to a report of a fight between four or five women at the tavern, Gipson came to his attention. Gipson was yelling profanity as the officers attempted to take Fortin into custody. Officer Wofford then described the confrontation with Gipson that followed.

Defense counsel began his cross-examination by asking Officer Wofford what he saw when he first came to the tavern. When the trial court sustained the State's objection, counsel asked to be heard outside the presence of the jury. Defense counsel explained:

It is our position that this officer's testimony is based on the fact that he needs to substantiate what his actions were and we can show that his actions were wrong. If we can't argue this, then you're depriving Mr. Gipson of putting on his entire theory of the case and evidence that supports it.

3 RP at 269.

The trial court responded that the defense did not have any expert to testify that Officer Wofford did anything improper under the law and thus had no basis to proceed with any such argument. The trial court added that Officer Wofford could not be impeached on a collateral issue and that the defense was limited to cross-examining Officer Wofford on what he testified to on direct.

Despite that ruling, defense counsel continued to ask Officer Wofford questions about his initial conduct at the tavern. When defense counsel asked Officer Wofford about encountering Maxwell, the trial court again excused the jury. The trial court informed defense counsel that because Officer Wofford's direct testimony started from when he saw Fortin on the ground and observed Gipson's behavior, his cross-examination was limited to that timeframe. However, defense counsel persisted in cross-examining Officer Wofford about the facts that preceded Gipson's arrest, and both defense counsel and Officer Wofford referred several times to the officer's report. On recross-examination, the trial court allowed defense counsel to ask Officer Wofford whether Gipson had complained to him that his actions were wrong.

Officer Horsley testified about how Gipson got his attention by yelling at the officers about his friend. He described the struggle with Gipson and Gipson's attempt to punch him in the groin. Defense counsel began his cross-examination by asking Officer Horsley about the initial events at the tavern and about Fortin's detention, but the trial court sustained the State's objections. There

was no objection when counsel asked whether Gipson was upset because the police were arresting the wrong person. Defense counsel then asked Officer Horsley about the discrepancies between his current description of the events and the description in his written report.

Officer Morrison testified about seeing Gipson fighting with the other officers and about using his Taser on Gipson. When defense counsel began its cross-examination by asking why Gipson was yelling and whether Fortin had been pepper sprayed and handcuffed, the State objected that these questions were beyond the scope of Officer Morrison's direct examination. After the trial court excused the jury, defense counsel again asserted that he was entitled to show that Officer Wofford's actions preceding Gipson's arrest were wrong: "First he originally arrested somebody without probable cause, without any time. He immediately comes back to the scene [and] pepper-sprays Mr. Fortin." 3 RP at 386. After replying that no witness had testified that any of Officer Wofford's actions were legally inappropriate, the trial court addressed defense counsel directly: "So you're frustrated you can't get your defense in, but you haven't laid the foundation to even try." 3 RP at 387.

Before the defense witnesses testified, the State asked the trial court to limit their testimony in accordance with its earlier rulings. The trial court ruled that it would allow brief testimony about the events that preceded Gipson's arrest. Fortin testified about Maxwell's arrest and about the officers' actions in handcuffing and arresting him before kneeing the back of his head and pepper spraying him. Fortin explained that Gipson became upset because these actions were unnecessary. Codi Robertson, Gipson's girlfriend, described the fight in the bathroom, Maxwell's arrest, Fortin's response, and Gipson's reaction to Fortin's arrest before she testified about Gipson's arrest.

After the defense rested, the State moved to admit ER 404(b) evidence concerning a 2009 incident in which Gipson assaulted a police officer while Fortin videotaped it. In opposing the motion, defense counsel asserted that Gipson had "never denied obstruction or resisting. He's never claimed that his actions were lawful." 4 RP at 487. The trial court ruled that evidence of the 2009 assault was admissible during the State's rebuttal and made the following observation about Gipson's theory and the supporting evidence:

> The evidence that's been presented to the court repeatedly throughout the State's case-in-chief is simply an argument that the defendant did not react until he observed the conduct of the law enforcement officers with regard to his friend, Mr. Fortin, repeatedly introducing a suggestion that his intent in this case was simply to try to protect his friend, to intercede on his friend's behalf.
>
> And while the court had cautioned and ruled that the evidence of police misconduct, if you will, was not admissible absent a defense being asserted by the defendant along those lines, in which case [the court] would need to go through the analysis of whether or not there was a foundation for such evidence . . . the defense witnesses repeatedly introduced statements suggesting that the defendant, again, was just simply trying to help, that he was trying to intercede on Mr. Fortin's behalf, that Mr. Fortin was being brutalized, and that was why he reacted the way he did. And all of which the court had essentially previously ruled was not admissible, yet it was repeatedly introduced by the defense case-in-chief.

4 RP at 489. The written conclusions of law supporting the ER 404(b) ruling confirmed that despite the trial court's earlier ruling that Gipson's theory of police misconduct was inadmissible, Gipson repeatedly introduced evidence that the police acted improperly and brutalized his friend.

Defense counsel began his closing argument by describing Officer Wofford's actions in arresting Maxwell without question and in kneeing Fortin, taking him to the ground, and pepper spraying him. At the State's request, the trial court instructed the jury as follows:

> A person who is being arrested may not resist arrest nor may they intervene on behalf of another person being arrested unless the person resisting has a reasonable basis to believe the arrestee is actually about to be seriously injured or killed.

No. 45662-1-II

4 RP at 587.  Gipson appeals his convictions.

ANALYSIS

A.    SCOPE OF CROSS-EXAMINATION

Gipson argues that the trial court's action in prohibiting him from cross-examining the police witnesses about the facts that preceded his arrest violated his constitutional rights to present a defense and to confront adverse witnesses.  We disagree.

1.  Legal Standard

The rights to present a defense and to confront and cross-examine adverse witnesses are guaranteed by both the state and federal constitutions.  U.S. CONST. amend. VI; WASH. CONST. art. 1, § 22.  However, these rights are not absolute.  *State v. Jones*, 168 Wn.2d 713, 720, 230 P.3d 576 (2010); *State v. Darden*, 145 Wn.2d 612, 620-21, 41 P.3d 1189 (2002).  A defendant's constitutional right to present a defense does not extend to irrelevant or inadmissible evidence.  *Jones*, 168 Wn.2d at 720.  The confrontation right and associated cross-examination also are limited by general considerations of relevance.  *Darden*, 145 Wn.2d at 621.  Courts may deny cross-examination if the evidence sought is vague, argumentative, or speculative.  *Id*.at 620-21.

We review a trial court's ruling on the admissibility of evidence for abuse of discretion.  *Id.* at 619.  An abuse of discretion exists when the trial court's exercise of discretion is manifestly unreasonable or based on untenable grounds.  *Id.*  Although the cross-examination of a witness to elicit facts that tend to show bias, prejudice or interest is generally a matter of right, the scope or extent of such cross-examination also is within the trial court's discretion.  *Id.*; *State v. Roberts*, 25 Wn. App. 830, 834, 611 P.2d 1297 (1980).

11

A trial court may preclude cross-examination where the circumstances only remotely tend to show bias or prejudice. *Roberts*, 25 Wn. App. at 834. Furthermore, the cross-examination of a witness is generally limited to the scope of the direct examination. *State v. Ayala*, 108 Wn. App. 480, 486, 31 P.3d 58 (2001), *review denied*, 145 Wn.2d 1031 (2002).

2. Trial Court Properly Limited Scope of Cross-examination

Gipson argues that by restricting his cross-examination of the police officers, the trial court prevented him from pursuing a relevant line of questioning that focused on the issues in dispute. Gipson characterizes these issues as follows: whether the police were untruthful in declaring that he assaulted Officer Wofford and tried to take the officer's gun, and whether the police instigated the aggression by taking him into custody for simply voicing his opinion about the wrongful arrests of his friends. Gipson directs most of his argument toward the latter issue, arguing that he "could not ask about the officers ignoring the crowd's admonishment that they were arresting the wrong person; he could not ask any questions about the police [sic] rough treatment of Fortin; and he could not ask why the police refused to investigate the perpetrators of the [bathroom] fight even though they knew [they] arrested the wrong person." Br. of Appellant at 25. According to Gipson, the trial court violated his right to pursue the theory that Officer Wofford incited the incident and had no right to take him into custody for speaking his mind.

Essentially, Gipson is arguing a claim of unlawful arrest, a claim that he specifically disavowed at trial. Gipson admitted to the trial court that he was guilty of obstruction and resisting arrest. And, there was no testimony that any of the persons arrested at the tavern were threatened in a manner that justified Gipson's actions. As the trial court instructed the jury, a person is prohibited from interfering with an arrest made by a uniformed police officer absent a threat of

serious bodily injury or death. *State v. Holeman*, 103 Wn.2d 426, 430, 693 P.2d 89 (1985). Without testimony showing such a threat, the facts about the police actions that preceded Gipson's arrest were irrelevant to whether Gipson assaulted Officers Wofford and Horsley and attempted to take Officer Wofford's gun.

Moreover, despite the questionable relevance of the police misconduct theory and the trial court's efforts to limit such evidence, the defense succeeded in introducing that theory during opening statement and pursuing it throughout the trial. Defense counsel repeatedly questioned Officer Wofford about his conduct and motives while at the tavern. For example, defense counsel asked, "When you arrived . . . you immediately arrested a young lady, right?" 3 RP at 279. After the court sustained the State's objection, counsel inquired, "Let's start with, did you pepper-spray someone?" 3 RP at 284. In objecting to these and similar questions, the State made only a few motions to strike. Therefore, most of defense counsel's leading questions and witnesses' testimony relating to Officer Wofford's conduct and motives remained before the jury. *See State v. Stackhouse*, 90 Wn. App. 344, 361, 957 P.2d 218 (when objection is sustained without a corresponding motion to strike, the testimony remains in the record for the jury's consideration), *review denied*, 136 Wn.2d 1002 (1998).

In addition, the trial court allowed defense counsel to ask Officer Wofford whether he, as opposed to Gipson, incited the crowd, and whether Gipson told the officer that his actions were wrong. And, after the defense witnesses testified about the officers' misconduct, defense counsel made several references to that misconduct during closing argument. The record shows that the

13

defense was able to introduce and to argue its theory that the officers rather than Gipson were at fault. We see no violation of Gipson's right to present a defense.

Gipson also argues that the trial court prevented him from confronting the officers about whether they were truthful in declaring that he assaulted Officer Wofford and tried to take his gun. In particular, Gipson asserts that the trial court did not allow him to explore "any avenue" to demonstrate Officer Wofford's credibility issues. Br. of Appellant at 25.

This argument misrepresents the record. The trial court's efforts to restrict the officers' cross-examination to the evidence introduced on direct did not prevent Gipson from challenging their credibility. Defense counsel cross-examined the officers closely about the inconsistencies in their testimony concerning the altercation with Gipson and his attempt to grab Officer Wofford's gun. And, contrary to Gipson's assertion that the trial court did not allow any cross-examination about Officer Wofford's report, defense counsel asked Officer Wofford several questions about the details in that report pertaining to the offenses charged. In addition, the defense witnesses directly challenged the officers' credibility as they described the events that unfolded at the tavern. During closing argument, defense counsel cited Officer Wofford's testimony on cross-examination as well as testimony elicited from other witnesses in challenging the officers' credibility.

The confrontation clause does not guarantee cross-examination that is effective in whatever way and to whatever extent the defense may wish. *Delaware v. Fensterer*, 474 U.S. 15, 20, 106 S. Ct. 292, 88 L. Ed. 2d 15 (1985). We see no abuse of discretion in the trial court's limitation of the scope of cross-examination and no violation of Gipson's confrontation rights.

We affirm Gipson's convictions.

Lee, J.

We concur:

Worswick, P.J.

Sutton, J.