**UNITED STATES of America**

v.

**Anthony THOMPSON, Defendant.**

**14–CR–228A**

United States District Court, W.D. New York.

Signed April 5, 2016

Filed April 6, 2016

Maura O'Donnell, U.S. Attorney's Office, Buffalo, NY, for United States of America.

Frank Richard Passafiume, Federal Public Defender, Buffalo, NY, for Defendant.

## DECISION AND ORDER RE: GOVERNMENT'S MOTIONS IN *LIMINE*

HONORABLE RICHARD J. ARCARA, UNITED STATES DISTRICT JUDGE

The Defendant has been charged in a four-count superseding indictment alleging violations of 18 U.S.C. § 1591(a) (sex trafficking either of minors or by force, fraud, or coercion) and § 1591(d) (obstruction or interference with enforcement of § 1591). The Government alleges that the Defendant "operated a commercial sex business in the Western New York area" and that, as part of that business, he "recruited women"—including the three victims[1] in this case—"to work as prostitutes under his direction and control." Docket 56 at 5 (Gov't's Trial Memo.) The Government further alleges that the Defendant "used physical and/or psychological coercion to force the victims to engage in commercial sex acts and to give him the money they earned." *Id.* Jury selection is scheduled to begin on April 6, 2016.

The Government has filed a motion *in limine* requesting five forms of relief. *See* Docket 44. The Government first asks for an order prohibiting the Defendant "from eliciting or presenting any evidence concerning [the] victims' sexual behavior, including prostitution, *prior to and subsequent to the time period*" at issue in the superseding indictment. *Id.* at 2 (emphasis in original). The Government's second motion is related to its first: the Government asks for permission "to introduce evidence of sexual behavior and prostitu-

---

1. The "victims" are, of course, "alleged victims." For the sake of brevity, however, the Court refers to them as "victims." *See* Fed. R. Evid. 412(d) ("In this rule, 'victim' includes an alleged victim.")

tion by the victims, including sexual relations with the defendant, *during the time period* charged" in the superseding indictment. *Id.* (emphasis in original). Third, the Government seeks to introduce evidence of uncharged criminal activity (described more fully below) in which the Defendant allegedly engaged. In the Government's view, this evidence "explains the 'climate of fear' created by the defendant" and it "provides the jury with the background and history" of the Defendant's relationship with the victims. *Id.* Fourth, the Government seeks a protective order prohibiting either party from disclosing the victims' full names. Finally, the Government moves to allow Victim 3, who is under 18 years old, to testify via closed-circuit television.

The Court grants the Government's first two motions. The Defendant is prohibited from introducing or eliciting evidence of the victims' pre- and post-indictment sexual behavior, including prostitution. The Government is permitted to introduce evidence of the victims' sexual behavior, including sexual relations with the Defendant, during the time period at issue in the superseding indictment.

The Court next preliminarily grants the Government's motion to introduce evidence of uncharged criminal activity subject to the Defendant's right to renew his objections at trial. Further, because the Defendant does not object to the Government's motion for a protective order, the Court grants the same.

Finally, based on the Government's representations (Docket 63 at 5), the Court holds in abeyance the Government's request for Victim 3 to testify via closed-circuit television until the Government calls Victim 3 as a witness. The Government is reminded, however, that if it renews its request, it should be prepared to provide the Court with evidence that would allow the Court to make "findings

on the record," 18 U.S.C. § 3509(b)(1)(C), of Victim 3's inability to testify for any of the reasons listed in § 3509(b)(1)(B).

## A. Evidence concerning the victims' sexual activity

As noted, the Government makes two related motions concerning the victims' sexual activity: one motion requesting that the Court prohibit the Defendant from introducing evidence of the victims' sexual behavior, including prostitution, before and after the time period at issue in the superseding indictment; and another requesting permission to introduce evidence of the victims' sexual behavior, including prostitution and sexual relations with the Defendant, during the time period at issue in the superseding indictment.

■ Federal Rule of Evidence 412 governs both motions. In a "criminal proceeding involving alleged sexual misconduct," Rule 412(a) prohibits evidence offered "to prove that a victim engaged in other sexual behavior," as well as evidence offered "to prove a victim's sexual predisposition." The Rule's purpose is straightforward: it is intended "to safeguard the alleged victim against the invasion of privacy, potential embarrassment and sexual stereotyping that is associated with public disclosure of intimate sexual details and the infusion of sexual innuendo into the factfinding process." 1994 Advisory Committee Note to Rule 412 (1994 ACN). Rule 412's purpose helps inform its application in this case.

## 1. Whether the Defendant may introduce evidence of the victims' pre- and post-indictment sexual behavior

■ As an initial matter, Rule 412(a) prohibits the Defendant from introducing or eliciting evidence concerning the victims' sexual behavior (including prostitu-

tion) that occurred prior and subsequent to the time periods at issue in the superseding indictment. This is, without question, a case involving alleged "sexual misconduct." Rule 412(a). It is also a case in which Rule 412's purpose would be served by prohibiting evidence of the victims' "other sexual behavior." [2] Finally, evidence of the victims' pre- and post-indictment sexual behavior would be evidence of "other sexual behavior"—that is, it would be evidence of the victims' "sexual behavior" *other than* the sexual behavior at issue in the superseding indictment. Rule 412(a)(1). Rule 412(a) bars such evidence.

There are, however, several exceptions to Rule 412(a)'s general prohibition. The only exception relevant here is Rule 412(b)(1)(C), which allows a criminal defendant to introduce otherwise-inadmissible evidence of a victim's "other sexual behavior" if "exclusion would violate the defendant's constitutional rights." The Defendant identifies two constitutional rights that, in his view, would be violated by excluding such evidence: his Fifth Amendment right to present a defense, and his Sixth Amendment right under the Confrontation Clause. Docket 60 at 3. The Court addresses each right in turn.

### i. The Fifth Amendment's Due Process Clause

■ First, applying Rule 412(a) in this case does not violate the Defendant's Fifth Amendment right to defend himself. Among its protections, the Fifth Amendment's Due Process Clause guarantees "the right to present the defendant's version of the facts ... to the jury so it may decide where the truth lies." *Washington v. Texas*, 388 U.S. 14, 19, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967). It does not follow, however, that a criminal defendant has a right to offer evidence that is irrelevant to the Government's charges. *See Taylor v. Illinois*, 484 U.S. 400, 410, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988) ("The accused does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence."); *Clark v. Arizona*, 548 U.S. 735, 769, 126 S.Ct. 2709, 165 L.Ed.2d 842 (2006) (referring to "a defendant's right as a matter of simple due process to present evidence favorable to himself *on an element that must be proven to convict him* ") (emphasis added). Put differently, the Due Process Clause does not give a criminal defendant the right to introduce irrelevant evidence.

**2.** The Defendant argues that "the application of Federal Rule of Evidence 412 to 'human trafficking' cases like this one is questionable" because, according to the Defendant, the Rule was principally aimed at "protect[ing] the privacy of rape victims thereby encouraging them to come forward." Docket 60 at 2. The Defendant argues that these concerns are irrelevant in a case involving prostitution because "prostitution is both a crime and is becoming increasingly less private.... [I]f a person advertised prostitution services on a web page or social media site, there cannot be a concern addressed [by] Rule 412." *Id.* Assuming (somewhat skeptically) the truth of this statement, the Defendant's argument is incorrect for two reasons. First, the term "sexual misconduct" in Rule 412 embraces sex-based offenses other than rape. *See* 1994 ACN ("The strong social policy of protecting a victim's privacy and encouraging victims to come forward to report criminal acts is not confined to cases that involve a charge of sexual assault.") Second, Rule 412's purpose is not just to protect a victim's privacy; the Rule is also meant to avoid "embarrassment and sexual stereotyping that is associated with public disclosure of intimate sexual details." *Id.* Further, the Rule is intended to protect (to at least some degree) the decorum of the Court's proceedings. *See id.* (noting that the Rule is meant to prevent "the infusion of sexual innuendo into the factfinding process"). Each of these goals is promoted by prohibiting evidence of the victims' "other sexual behavior," regardless of whether the victims have somehow "waived" their right to privacy.

Evidence of the victims' pre- and post-indictment sexual behavior would be irrelevant (and, therefore, inadmissible) in this case because it does not tend to "make ... more or less probable" any fact which the Government must prove under 18 U.S.C. § 1591(a). Fed. R. Evid. 401. To prove its sex trafficking charges, the Government must show, among other things, that the Defendant recruited, enticed, harbored, transported, provided, obtained, advertised, maintained, patronized, or solicited each of the victims, while knowing (or recklessly disregarding) "that means of force, threats of force, fraud, coercion ... or any combination of such means [would] be used to cause" the victims "to engage in a commercial sex act."[3] 18 U.S.C. § 1591(a).

The victims' pre- and post-indictment sexual behavior is irrelevant to, and therefore "does not provide a defense" for, what the Government must prove under § 1591(a). *United States v. Elbert*, 561 F.3d 771, 777 (8th Cir.2009). Put another way, whether the victims "engaged in acts of prostitution before or after their [alleged] encounters with [the Defendant] ... would only prove *other* people may be guilty of similar offenses of recruiting, enticing, or causing these victims to engage in a commercial sex act." *Id.* at 777 (emphasis added).[4] To be sure, the Defendant may introduce or elicit evidence concerning whether Victims 1 and 2 engaged in prostitution (during the time period at is-

sue) of their own volition, and not as a result of "force, threats of force, fraud, coercion ... or any combination of such means." § 1591(a). But the Defendant may *not* attempt to show that Victims 1 and 2 voluntarily engaged in prostitution based on the fact that they allegedly engaged in prostitution before and after the events giving rise to this case.

Thus, barring evidence of the victims' pre- and post-indictment sexual activity does not violate the Defendant's Fifth Amendment right to present a defense. Accordingly, Rule 412(b)(1)(C)'s exception to Rule 412(a) does not apply.

### ii. The Sixth Amendment's Confrontation Clause

Second, applying Rule 412(a) in this case does not violate the Defendant's Confrontation Clause rights. The Defendant argues that his rights under the Confrontation Clause would be violated by excluding evidence of the victims' pre- and post-indictment prostitution because such evidence is "evidence of prior crimes" with which the Defendant should be allowed to impeach the victims. Docket 60 at 3. Similarly, the Defendant argues, he should be allowed to inquire into whether Victim 1 engaged in prostitution after she entered into a proffer agreement with the Government, thereby allegedly violating the agreement. *Id.* at 4. Rule 412(a) prohibits the Defendant from introducing or eliciting evidence of the victims' "other sexual be-

---

3. The Government's burden is slightly different for Victim 3, who is a minor, but that difference is immaterial to the evidentiary question now before the Court. *See* §§ 1591(a) and 1591(c).

4. At least two other Courts of Appeals have reached the same conclusion as the Eighth Circuit. *See United States v. Cephus*, 684 F.3d 703, 708 (7th Cir.2012) (rejecting an argument similar to the Defendant's because such evidence "would have been irrelevant.... [T]he fact that she'd been a prostitute before

does not suggest that [the defendant] didn't beat and threaten her"); *United States v. Valenzula*, 495 Fed.Appx. 817, 820 (9th Cir. 2012) ("Evidence of prior prostitution is irrelevant to whether the victims consented to working as prostitutes. Even if some of the victims consented initially, [defendants] violated § 1591 by continuing to harbor and maintain them once [defendants] realized that force, fraud, or coercion (or threats thereof) would have to be used to cause the girls to engage in a commercial sex act.").

havior" regardless of whether he offers it "as substantive evidence or for impeachment." 1994 ACN. The question, then, is whether prohibiting the Defendant from impeaching the victims with such evidence violates the Confrontation Clause.

 "The Confrontation Clause guarantees a criminal defendant the right to cross-examine government witnesses at trial" by, among other means, testing " 'the believability of a witness and the truth of his testimony.' " *United States v. Figueroa*, 548 F.3d 222, 227 (2d Cir.2008) (citing *Davis v. Alaska*, 415 U.S. 308, 316, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974)). There are, of course, many ways of impeaching a witness, such as by "revealing possible biases, prejudices, or ulterior motives of the witnesses as they may relate directly to issues or personalities in the case at hand." *Id.* (citations omitted). A district court, however, has discretion to "impose reasonable limits on such cross-examination." *Id.* (citations omitted). And a district court's exercise of this discretion, within reasonable limits and for legitimate reasons, is entirely consistent with the Confrontation Clause. Thus, district courts "retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on ... cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witnesses' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall*, 475 U.S. 673, 679, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986).

 One such "reasonable limit" is to prohibit the Defendant from cross-examining sex trafficking victims about acts of prostitution that are unrelated to the charges in the superseding indictment. This is for the simple reason, implicit in Rule 412, that the "unchastity of a victim has no relevance whatsoever to the victim's credibility as a witness." *Elbert*, 561

F.3d at 777 (citations and brackets omitted). Moreover, to the extent that prior acts of prostitution resulted in criminal convictions which might provide a basis for impeachment under Rule 609, Rule 412(a)'s prohibition trumps the Defendant's ability to impeach the victims with those convictions. *See* 1994 ACN ("Evidence, which might otherwise be admissible under Rules ... 608[and] 609 ... must be excluded if Rule 412 so requires.") Importantly, prohibiting the Defendant from attempting to impeach the victims with evidence protected by Rule 412(a) does *not* mean that the Defendant cannot attempt to impeach the victims at all; it simply means that certain areas of impeachment are off-limits. This limit does not violate the Confrontation Clause, which guarantees only "an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20, 106 S.Ct. 292, 88 L.Ed.2d 15 (1985) (per curiam) (emphasis in original).

 Further, even if Rule 412(a) did not prohibit the Defendant from impeaching the victims with prior prostitution-related convictions, the impeachment value of such evidence would be substantially outweighed by unfair prejudice and embarrassment to the victims. *See* Fed. R. Evid. 609(a)(1)(B). *See also Elbert*, 561 F.3d at 777 (affirming district court decision that defendant in sex trafficking case could not impeach victims with prior instances of prostitution because "[a]ssuming any impeachment relevance ... in other acts of prostitution, any probative value the evidence may have is 'substantially outweighed by the danger of unfair prejudice' ") (quoting Rule 403). As a result, the Confrontation Clause would still allow the Court to prohibit the Defendant from attempting to impeach the victims with

their prior prostitution-related convictions. Prostitution is not a crime involving dishonesty or deceit, such that a prior prostitution conviction might suggest that the victim has a history of lying and that his or her testimony may therefore be false. *Cf.* Fed. R. Evid. 609(a)(2). A prior prostitution conviction thus has relatively little impeachment value. On the other hand, in addition to possibly serving to harass or embarrass the victim, impeaching a victim in a prostitution case with the victim's prior prostitution conviction has the potential to unnecessarily confuse the jury by suggesting that, because prostitution is illegal, the victims' testimony is inherently suspect or that the defendant's alleged conduct is less culpable.

Thus, barring evidence of the victims' pre- and post-indictment sexual activity does not violate the Defendant's Sixth Amendment Confrontation Clause rights. Accordingly, Rule 412(b)(1)(C)'s exception to Rule 412(a) does not apply.

2. **Whether the Government may introduce evidence of the victims' sexual behavior, including sexual relations with the Defendant, during the time period at issue in the superseding indictment**

■ Although the Defendant is prohibited from introducing evidence of the victims' pre- and post-indictment sexual behavior, the Government *may* introduce evidence of the victims' sexual behavior during the time period at issue in the superseding indictment. Among Rule 412's exceptions is one for "evidence of specific instances of a victim's sexual behavior with respect to the person accused of the sexual misconduct ... *if offered by the prosecutor.*" Rule 412(b)(1)(B) (emphasis added). Any otherwise-admissible evidence of the victims' sexual activities during the time period at issue in the superseding indictment is therefore admissible, provided that the

Government, and not the Defendant, introduces or elicits such evidence. For the same reason, assuming the evidence is otherwise admissible, Rule 412(b)(1)(B) allows the Government to introduce evidence of the Defendant's sexual relations with the victims. If the Government does avail itself of its right to introduce evidence of the victims' sexual behavior under Rule 412(b)(1)(B), the Defendant may, of course, cross-examine the victims as to such testimony.

■ The Defendant, however, is admonished that his cross-examination may not stray into areas barred by Rule 412(a)—that is, the Defendant's cross-examination may not inquire into the victims' "other sexual behavior" or any alleged "sexual predisposition." Rule 412(a)(1) & (2). Allowing the Government to introduce evidence under Rule 412(b)(1)(B) does *not* open the door to the Defendant introducing evidence that is otherwise inadmissible under Rule 412(a). Interpreting Rule 412 in that way would entirely undermine Rule 412's purpose. Rule 412 comes into play in a criminal case only when the charged crimes involve some form of "sexual misconduct." Fed. R. Evid. 412(a). Proving such crimes necessarily requires the Government to introduce evidence of the victim's sexual behavior—namely, evidence of the sexual behavior underlying the crimes charged in the indictment. If the introduction of that evidence opened the door to the introduction of "other sexual behavior" evidence, Rule 412(a) would serve no purpose.

B. **Evidence concerning uncharged criminal activity**

■ The Government next moves for permission to introduce evidence concerning, among other things, "the defendant's [alleged] use of alcohol, drugs, violence,

threats of violence and his sexual relations with the victims." Docket 44 at 11. *See also id.* at 2–3 (listing other forms of similar evidence the Government would like to introduce). According to the Government, this evidence "arose out of the same transactions [and] is inextricably intertwined with the trafficking charges in the Indictment" and is therefore "necessary to complete the story of the crimes on trial." *Id.* at 11. Specifically, the Government claims that this evidence "will show how the defendant was [allegedly] able to exert control over the victim-witnesses in various ways, including but not limited to creating a 'climate of fear.'" *Id.*

██ Evidence concerning "uncharged criminal activity is not considered other crimes evidence under Fed[era] R[ule of] Evid[ence] 404(b) if it arose out of the same transaction or series of transactions as the charged offense, if it is inextricably intertwined with the evidence regarding the charged offense, or it if is necessary to complete the story of the crime on trial." *United States v. Carboni*, 204 F.3d 39, 44 (2d Cir.2000) (quotation marks omitted). As noted, to prove its sex trafficking charges in this case, the Government must prove, among other things, that the Defendant knew (or recklessly disregarded) "that means of force, threats of force, fraud, coercion ... or any combination of such means [would] be used to cause" the victims "to engage in a commercial sex act." 18 U.S.C. § 1591(a). *See also* § 1509(e)(2) (definition of "coercion").

Based on the Court's current understanding of the allegations, facts, and evidence in this case, the Government's proposed evidence appears to be admissible either as evidence directly relevant to the charged crimes or as relevant background evidence. *See United States v. Kelly*, No. 07–CR–374(SJ), 2008 WL 5068820, at *4–8 (E.D.N.Y. July 10, 2008) (finding that similar evidence was admissible as non-Rule 404(b) evidence in a sex trafficking case). The Defendant partially concedes this point, noting that he "has no objection as long as the Government clearly links those crimes to the offenses charged." Docket 60 at 5. The Defendant objects, however, that some crimes, "such as providing the witnesses with drugs and alcohol[,] ... should not be admissible." *Id.* This is so, the Defendant argues, because "[a]s long as that behavior was consensual it can hardly be linked to the 'climate of fear' that the Government suggests." *Id.*

The Court will preliminarily grant the Government's motion, subject to the Defendant's right to renew his objection that evidence of uncharged crimes is inadmissible either under the *Carboni* standard or another Rule of Evidence. *See, e.g.,* Fed. R. Evid. 403. However, even if this evidence is not admissible as background evidence, the Government would not be precluded from arguing that it is nonetheless admissible under Rule 404(b), assuming that it is otherwise admissible. *See* Gov't's Trial Memo. at 22–23 (providing the Defendant with notice that it intends to attempt to offer such evidence under Rule 404(b)).

## C. Protective order

Finally, the Government moves for a protective order "to protect the identity of all three victims throughout the course of the trial and any ancillary proceedings, including during testimony and in any motions, pleadings or other papers filed with the Court and to prohibit the parties from releasing to anyone, including members of the press, the identities of Victim 1, Victim 2, and Victim 3." Docket 44 at 16. The Government argues that such an order is necessary for two reasons. First, "the testimony to be given by the Victims will be both sensitive and explicit and will affect them personally and could affect their ability to obtain gainful employment in the future if their full names are provided

during the trial." Second, the Government asserts, after the Defendant was arrested in this case, there was allegedly "reason to believe that the defendant himself contacted one or more witness or had others contact them on his behalf in an attempt to influence trial testimony." *Id.* at 15. In response, the Defendant states that "[t]here is no objection to allowing the witnesses to testify without revealing their full names to the public." Docket 60 at 5.

 Although the Defendant does not oppose the Government's motion, the Court must still consider that "the press and general public have a constitutional right of access to criminal trials." *Globe Newspaper Co. v. Sup.Ct. for Norfolk Cnty.*, 457 U.S. 596, 603, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982). This right, however, "is not absolute" and may be curtailed in "limited circumstances" when the Government puts forth a "weighty" justification. *Id.* at 606, 102 S.Ct. 2613. Specifically, the Government must demonstrate that "the denial [of public access] is necessitated by a compelling governmental interest, and is narrowly tailored to serve that interest." *Id.* at 607, 102 S.Ct. 2613.

 The Government has a compelling interest in limiting identification of the victims in this case. Given the anticipated explicit and sensitive nature of the evidence in this case, the Government has a compelling interest in protecting the victims from "likely adverse personal, professional and psychological consequences of

linking their identities to their past lives as sex workers." *United States v. Paris*, Cr. No. 03:06–cr–64 (CFD), 2007 WL 1484974, at *2 (D.Conn. May 18, 2007) (granting a protective order on facts similar to those alleged in this case). Similarly, the Government has a compelling interest in encouraging crime victims to testify by protecting them from the adverse consequences of testifying.

Further, the limited scope of the Government's proposed protective order—limiting identification to the victims' first names and last initial—shows that the protective order would be narrowly tailored to serve the interests identified above. Even with the Government's proposed limit in place, the press and the public would still be able to attend trial and follow the testimony and evidence. "In particular, the public and press will be able to hear [the victims'] testimony in full." *Id.* The only information that would be denied to the public and the press is the victims' complete last names. Thus, the First Amendment interests underlying the press and the public's right to access criminal trials would still be fully served: even with the Government's proposed protective order in place, the trial in this case would still open to "[p]ublic scrutiny," and it would still "foster[ ] an appearance of fairness." *Globe Newspaper Co.*, 457 U.S. at 606, 102 S.Ct. 2613. In short, the Court cannot envision a protective order that is more narrowly tailored to serve the Government's compelling interests in this case.[5]

---

5. In addition to *Globe Newspaper*, the Government relies on 18 U.S.C. § 3509(d)(3)(A) as a basis for the Court to issue a protective order as to Victim 3. Section 3509(d)(3)(A) authorizes the Court, on motion "by any person," to "issue an order protecting a child from public disclosure of the name of or any other information concerning the child in the course of the proceedings, *if the court determines that there is a significant possibility that such disclosure would be detrimental to the child.*" (emphasis added). Although § 3509(d)(3)(A)

is less than clear on this point, the statute's language suggests that the Court must have some factual basis, other than the Government's representations, to issue a protective order. Indeed, the Government relies on this Court's decision addressing a nearly identical issue in *United States v. Graham. See* 12–cr–311A, Docket 31 (Jan. 8, 2013). In *Graham*, the "Government .... submitted mental health evaluations" of two victims "under seal, which detail[ed] [the victims'] current

Thus, the parties in this case (as well as their representatives and agents), are prohibited, in filings with the Court, evidence introduced or elicited during trial, or in communications with the press or other third parties, from identifying Victims 1, 2, and 3 by their full names at any point before, during, or after trial. The parties may refer to Victims 1, 2, and 3 *only* by their first names and last initials. In addition, because Victim 3's mother is expected to testify at trial, and because Victim 3 shares the same last name as her mother, the parties are to identify Victim 3's mother only by her first name and last initial. Because some witnesses may not be familiar with the victims by their given names, witnesses may identify the victims using any nickname by which they know the victims. Witnesses may not, however, identify any victim (or Victim 3's mother) by their full legal names.

## CONCLUSION

The Government's motions *in limine* (Docket 44) are granted in part, preliminarily granted in part, and held in abeyance.

**SO ORDERED.**

mental states and raise[d] concerns regarding the potential adverse psychological effects of their testimony." *Id.* at 4. The Government has not filed similar evaluations in this case

and, consequently, has not given the Court a sufficient basis to issue a protective order under § 3509(d)(3)(A).