Argued and submitted March 31, 1999, convictions affirmed; reversed and
remanded for imposition of sentences March 8, 2000

## STATE OF OREGON,
*Appellant,*

*v.*

## JESUS ENRIQ MERCADO-VASQUEZ,
*Respondent.*

(963549C2; CA A98925)

998 P2d 743

Timothy A. Sylwester, Assistant Attorney General, argued the cause for appellant. With him on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Jesse Wm. Barton, Deputy Public Defender, argued the cause for respondent. With him on the brief was David E. Groom, Public Defender.

Before Edmonds, Presiding Judge, and Deits, Chief Judge, and Armstrong, Judge.

DEITS, C. J.

## DEITS, C. J.

The state appeals from a judgment imposing two concurrent 16-month sentences on defendant's convictions for rape in the second degree. ORS 163.365. The state contends that the trial court erred in concluding that imposition of the statutorily required 75-month mandatory minimum sentences for these crimes would constitute cruel and unusual punishment under Article I, section 16, of the Oregon Constitution.[1] For the following reasons, we reverse and remand for imposition of the statutorily mandated sentences for defendant's crimes.

Defendant was charged with three counts of first-degree rape, three counts of second-degree rape, two counts of first-degree sodomy, two counts of second-degree sodomy, and three counts of first-degree sexual abuse. The crimes were committed over the course of about a year against the 13-year-old daughter of defendant's girlfriend. Defendant pleaded guilty to two counts of second-degree rape in exchange for the dismissal of the remaining charges. At sentencing, defendant argued against the imposition of the mandatory minimum sentences of 75 months required for these crimes by ORS 137.700 (Measure 11), on the ground that such sentences would constitute cruel and unusual punishment. The only information before the sentencing court was the presentence investigation report (PSI), and brief statements by the victim, by a member of defendant's family, and by a friend of defendant's family.

The PSI revealed the following information about defendant's crimes. *See* ORS 137.077(1) (appellate courts may disclose information from PSI when necessary for legal analysis of the case or to report the reasoning of the appellate court). At about 3:00 a.m. on September 9, 1996, the victim reported to the Medford police that her mother's boyfriend

---

[1] Article I, section 16, of the Oregon Constitution, provides, in part:

"Cruel and unusual punishments shall not be inflicted, but all penalties shall be proportioned to the offense."

Although the court did not cite Article I, section 16, as the source of its ruling, the parties on appeal assume that that provision is the basis for the court's ruling, and the record supports that assumption.

had come to her bedroom several hours earlier and raped her. She further stated that he was armed with a gun and that he had raped, sodomized, and sexually abused her several times in the past, beginning in October 1995. She stated that she objected to the contacts but that defendant had shown her his gun and reminded her that it was loaded. He told her not to tell anyone, or he would shoot her and the person she told. The victim described the gun, and the police found a gun of that description under the pillow where defendant was sleeping when he was arrested. The victim identified the gun as the one used during the rape. The victim's mother reported that she was not aware of the abuse, but that she believed her daughter was telling the truth.

Defendant admitted to the rapes, sodomy and sexual abuse, but stated that he had committed these acts at the request of the victim's mother. He stated that no conversations occurred during the crimes and that the victim did not object. However, he also stated that when he penetrated the victim's anus, he withdrew after she complained. He admitted to oral intercourse, but then denied it. He indicated that he knew that the victim was only 13 years old and that it was a crime to have sex with her. He denied taking the gun into the victim's bedroom and denied knowing that it was under his pillow, although he admitted that it was his gun. In a later interview, defendant claimed that the sexual relationship began because the victim requested it, that the mother consented, and that he had sold the gun to friends several months before his arrest. He further claimed that he had not realized that he should not have sexual relations with minors and that he did not feel that he had a sexual problem.

The victim reported that she hated defendant and was frightened of his family. The victim's mother reported also that she hated defendant, was depressed and suicidal, and that she wished to move from the area because defendant's family had made threats against her and her daughter.

At sentencing, the victim stated: "I feel that he should be punished for what he did, and well, if he's just deported, he'll come, and that scares me even more. I don't really know. I can't know what to say. I can't say more, but I

really wish that he could be punished." A friend of defendant's family stated that he had known defendant for eight years, that defendant had never caused a problem with any of their children, that defendant was active in sports, was a good worker, and a fine person. When asked by the court if it was against the law in Mexico for a 22-year-old man to have sex with a 14-year-old girl, the witness indicated that it was. When asked how often the crime was prosecuted, the witness stated that he did not know. Defendant's sister then stated that defendant was a fine person and asked that clemency be shown toward him because he was going to be deported to Mexico.

In making his findings that the 75-month statutorily mandated sentences would constitute cruel and unusual punishment for defendant's crimes, the sentencing judge commented that, based on his own experiences and several discussions of law with the Chief Justice of the Guanajuato Supreme Court, the sentencing judge believed that, due to "cultural considerations," crimes such as defendants' crimes either would not be punished extensively by Mexican authorities, the perpetrator would move to another state, or the crimes would be "taken care of as a family matter." The court then noted that "there was never any denial that the victim in this case was the victim and was sexually active with other males." Finally, he likened the case to a statutory rape case he recalled from the 1920s where "the defendant in that case was more sinned against than sinning in that he characterized the young woman as a sexually active young woman and characterized the situation as a moth flying around the flame of a candle and that the defendant finally got caught in the candle and burned." He concluded that the victim in the present case "is a very mature looking young woman," who "obviously has led a very sophisticated life up to this point." He then stated that it would be cruel and inhuman to sentence defendant to 75 months' imprisonment and instead imposed a sentence of 16 months' imprisonment.

The court later entered written findings in support of its conclusion that the 75-month statutorily mandated sentence would constitute cruel and unusual punishment; that defendant had been in this country for eight years and had had no previous problems with the criminal justice system;

that defendant will be deported as a result of these convictions; that deportation will be a harsh consequence because defendant's family is in this country; that crimes such as defendant's are rarely prosecuted in Mexico because Mexican culture views these crimes differently than does our culture; that statutory rape statutes are designed to protect young victims from being preyed on by much older people but that the victim in this case led a very sophisticated lifestyle while the defendant was naive; that the victim was close to 14 years of age at the time of the final rape; that the victim was sexually active with others and was a willing participant in the crimes; that before the enactment of Measure 11, the court would have imposed a probationary sentence with county jail time for such crimes; that the defendant cooperated with the police and was unaware of the criminality of his conduct; and that there "is a problem with the proportionality when a defendant can force himself upon a 14-year old (*i.e.*, have non-consensual intercourse with her) and receive optional probation for Sexual Abuse in the Second Degree, and another defendant can have consensual intercourse with a 13-year, 11-month old, and receive a 75-month prison sentence."[2]

On appeal, the state argues that the trial court erred in concluding that the 75-month sentences mandated by ORS 137.700 for defendant's crimes constituted cruel and unusual punishment under Article I, section 16, of the Oregon Constitution. Defendant responds that his deportation following the service of his 16-month sentence has rendered this appeal moot. Defendant further argues that the trial court correctly concluded that 75-month sentences would constitute cruel and unusual punishment for defendant's crimes.

■      As to defendant's argument that his deportation has rendered this appeal moot, that issue has been decided against his position in *State v. Lavitsky*, 158 Or App 660, 976 P2d 82 (1999). In *Lavitsky*, as in this case, the criminal defendant faced deportation after serving the sentence imposed for his crimes, and the sentence had been fully served at the time

---

[2] We would note that use of forcible compulsion in the course of sexual abuse is defined as first-degree, not second-degree, sexual abuse. It carries a mandatory minimum sentence of 75 months under Measure 11. ORS 137.700(2)(a)(P).

the propriety of that sentence was before this court on appeal. *Id.* at 662-63. We stated:

> "Regardless of defendant's release, our decision on the merits will still have a real effect on, or concerning, the rights of the parties. The relief the state seeks—a modification of defendant's sentence—is real and concrete, not abstract and hypothetical. That relief, if granted, will, as a matter of law, alter the state's rights and defendant's obligations under the sentence." *Id.* at 664.

Based on our reasoning in *Lavitsky*, we conclude that the present appeal is not moot.

■■      As to the state's argument that 75-month sentences do not constitute cruel and unusual punishment for defendant's crimes, we agree. None of the trial court's findings, either individually or collectively, persuades us otherwise. A sentence is cruel and unusual under Article I, section 16, of the Oregon Constitution, if it "is so disproportionate to the offense as to shock the moral sense of all reasonable persons as to what is right and proper." *State v. Isom*, 313 Or 391, 399, 837 P2d 491 (1992). The statutorily mandated sentence required in this case does not meet that standard.

■      We first turn to what the sentencing court terms the "cultural considerations" for concluding that the statutorily mandated sentences would violate Article I, section 16. We will assume solely for the sake of argument (and with all due apologies to Mexico's judiciary and law enforcement for the assumption) that the trial court correctly concluded that crimes of rape, sexual abuse and sodomy against children in Mexico are seldom punished due to "cultural considerations." Such a conclusion is entirely irrelevant to this case. Defendant, 22 years old at the time of these crimes, had lived in *this* country, not in Mexico, since early adolescence. The crimes were committed in *this* country. The crimes violated the laws of *this* country. Whether or not the defendant might have gone unpunished for his crimes had they been committed in the country of his birth has nothing to do with the propriety of sentencing him under the laws of this country. To the extent that the court's "cultural considerations" may reflect a belief that the victim also had Mexican ancestry and, thus, somehow was entitled to only as much protection under our

laws as the court believed she would have had under the laws of Mexico, such logic is fatally flawed. First, nothing in the record indicates that the victim was Mexican or had ever been to Mexico, although she does have a hispanic name. Second, even if it could be assumed that the victim was Mexican, our laws protect Mexican children to the same extent that they protect any other children in this state from sexual offenders of any nationality. In short, nothing in the record provides any reason for concluding that the extent to which defendant's crimes could or would have been punished in his country of origin or the victim's supposed country of origin has any bearing on whether the sentences required for the crimes under Oregon law violate the Oregon Constitution.

■      We next turn to the court's consideration of the victim's purported promiscuity and sophistication as compared to defendant's purported naivete. While it is true that a victim's participation in a crime, as well as a defendant's mental state, including any mental disabilities, may play roles in assessing the constitutionality of sentences, such considerations do not lead to a conclusion in this case that the sentences required by ORS 137.700 for defendant's crimes violate Article I, section 16.

First, we note the scant basis in the record for the court's conclusions about the victim's promiscuity and sophistication. Defense counsel did assert at sentencing that it had been reported that the victim had had "sexual relationships," and argued on that basis that the degree of harm to the victim was less than would be typical for rape victims. Nothing in the PSI or the statements of those who spoke at the hearing bears out that statement. Based on that statement, the court concluded that the victim "was apparently quite sexually active." The court also observed that the victim was "a very mature looking young woman and, in my opinion, could pass for much older than she is." The court later made a finding that the victim was a "willing participant" in the crimes.[3]

_____

[3] We note that, even viewed most favorably to defendant, the record at most reflects that the victim's mother "consented" to the abuse of the victim, and that the victim acquiesced to contacts other than anal sodomy. Given this record, characterization of the victim's participation as "willing" is doubtful, at best, even assuming that the court chose to disbelieve the vast majority of the information

Under Oregon law, children are not legally capable of consenting to sexual acts. ORS 163.315. A conclusion that a child victim has had "sexual relationships," therefore, amounts to nothing more than a conclusion that the child has been a victim of sex crimes in the past. That a child has been a victim of sex crimes on multiple occasions does not provide grounds for concluding that her later abusers constitutionally must be given lighter sentences than her earlier abusers because the child has become sexually "sophisticated" as a result of the victimization. The court's implicit finding that the laws prohibiting the rape of children were not intended to protect victims such as this one is unsupportable. *Cf., State v. Silverman*, 159 Or App 524, 527-28, 977 P2d 1186, *rev den* 329 Or 528 (1999) (that the victim under the age of 14 acquiesced on multiple occasions to sexual abuse and that that defendant did not believe that sexual abuse harmed the child victim did not provide grounds for failing to impose statutorily mandated sentence).

■ As to the court's conclusion that defendant was "naive," we can only conclude that the basis for that finding is that defendant denied at one point that he knew that it was unlawful to engage in sex acts with a 13 year old (although he did, at another point, acknowledge that he knew it was unlawful). While ignorance of a child victim's actual age may be a defense to sexual crimes under some circumstances, *see* ORS 163.325, it is axiomatic that ignorance of the law is not a defense. Thus, while the trial court's observation that the victim looked physically mature might be relevant had defendant claimed ignorance of her actual age, defendant here acknowledged that he knew the victim was only 13. Moreover, while an offender's diminished mental capacity often has been a factor considered in determining the propriety of a sentence, nothing in this record supports a conclusion that this defendant suffered from a diminished mental capacity. *See, e.g., State v. Gee*, 156 Or App 241, 965 P2d 462, *mod on recons* 158 Or App 597, 976 P2d 80 (1998), *rev den* 328 Or 594 (1999) (where defendant had a self-induced substance abuse problem but no mental condition that negated the required

contained in the PSI concerning the nature of defendant's crimes against the victim.

culpable mental state for the crime, trial court erred in refusing to impose statutorily mandated sentence). In sum, we find nothing about the child victim's purported "sophistication," and nothing about the adult defendant's purported "naivete," to support a conclusion that imposition of statutorily mandated sentences for defendant's crimes violates Article I, section 16, of the Oregon Constitution.

Another reason the court gave for its conclusion that the statutorily mandated sentence was unconstitutional was that before the enactment of Measure 11, a defendant such as this would have received a sentence of probation. While it is true that it would have been theoretically possible to sentence such a defendant to probation under the sentencing guidelines, we note that it also would have been possible for the court to impose a presumptive sentence of up to 18 months or a departure sentence of up to 36 months for one of the offenses, and a presumptive sentence of up to 28 months or a departure of up to 56 months for the second offense. In short, while it is true that defendant could have received a sentence of probation under the pre-Measure 11 sentencing scheme, it is also true that, with consecutive sentences, this defendant could have received a sentence of up to 92 months for these crimes. We are unconvinced that the fact that defendant could have received a lesser sentence for these crimes before the enactment of Measure 11 means that the statutorily mandated sentence is cruel and unusual under Article I, section 16, of the Oregon Constitution.

The court further found that defendant cooperated with the state and gave a complete statement of his participation in the crime and that the statutorily mandated sentence would be cruel and unusual for that reason. It is true that it can be said that defendant cooperated with the state in that he negotiated to have 11 charges against him dropped in exchange for his plea of guilty to these two crimes. It is also true that he gave statements, albeit contradictory ones, to the police about the crimes. A great many criminal defendants make statements about their crimes to the police, and a great many of them "cooperate" with the state by entering into plea bargains in exchange for other charges being dropped. Neither of those factors supports the trial court's

conclusion that the sentences required by ORS 137.700 are constitutionally infirm as applied to defendant.

Finally, the trial court found that the statutorily mandated sentences would be cruel and unusual as applied to defendant because he would be deported as a result of his convictions in this case. We disagree that the fact that defendant will live in a different country means that imposition of the sentence required for his crimes committed in this country is unconstitutional. The parties acknowledge that defendant will not be subjected either to criminal penalties or to any form of post-prison supervision for these crimes while in Mexico. Defendant would be subjected to almost nine years of post-prison supervision in this country after release from prison, were he not deported. *See* ORS 144.103. Under the circumstances, the fact that defendant would be returned to Mexico after his release from prison does not provide a basis for concluding that imposition of the statutorily mandated sentences violates Article I, section 16, of the Oregon Constitution.

Convictions affirmed; reversed and remanded for imposition of sentences required by ORS 137.700.