# IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

### September 2017 Term

_____

No. 17-0419

_____

**FILED**

**October 19, 2017**

released at 3:00 p.m.
RORY L. PERRY, II CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**STATE OF WEST VIRGINIA, EX REL. MATTHEW HARVEY,
PROSECUTING ATTORNEY,**
Petitioner

**V.**

**HONORABLE JOHN C. YODER, CIRCUIT JUDGE,
TWENTY-THIRD JUDICIAL CIRCUIT,
AND GERALD G. RANKIN, JR,**
Respondents

_____

### PETITION FOR WRIT OF PROHIBITION

### WRIT GRANTED, IN PART; DENIED, IN PART

_____

Submitted:  October 4, 2017
Filed: October 19, 2017

Timothy D. Helman                         J. Daniel Kirkland
Assistant Prosecuting Attorney            Arnold & Bailey, PLLC
Charles Town, West Virginia               Charles Town, West Virginia
Attorney for Petitioner                   Attorney for Gerald G. Rankin

**JUSTICE DAVIS delivered the Opinion of the Court.**

**CHIEF JUSTICE LOUGHRY concurs and reserves the right to file a concurring opinion.**

**JUSTICE WORKMAN concurs and reserves the right to file a concurring opinion.**

**JUSTICE KETCHUM concurs and reserves the right to file a concurring opinion.**

**SYLLABUS BY THE COURT**

1.      "The test used to determine whether a trial court's exclusion of proffered evidence under our rape shield law violated a defendant's due process right to a fair trial is (1) whether that testimony was relevant; (2) whether the probative value of the evidence outweighed its prejudicial effect; and (3) whether the State's compelling interests in excluding the evidence outweighed the defendant's right to present relevant evidence supportive of his or her defense."  Syllabus point 6, *State v. Guthrie*, 205 W. Va. 326, 518 S.E.2d 83 (1999).

2.      In order to rebut evidence on an evidentiary fact under Rule 412(b)(1)(C) of the West Virginia Rules of Evidence, (1) the original evidence must be inadmissible under Rule 412; (2) the rebuttal evidence must be similarly inadmissible; and (3) the rebuttal evidence must be limited to the same evidentiary fact as the original inadmissible evidence.

i

**Davis, Justice:**

This matter was filed as a petition for a writ of prohibition, under the original jurisdiction of this Court, by the Office of the Prosecuting Attorney of Jefferson County (hereinafter "the State"). In this proceeding, the State seeks to have this Court prohibit enforcement of an order of the Circuit Court of Jefferson County[1] that allows the Respondent, Gerald G. Rankin, Jr. (hereinafter "Mr. Rankin"), to testify at his criminal trial about the sexual history of his adolescent victim, M.Y.[2] After carefully reviewing the briefs, the arguments of the parties, the legal authority cited, and the record presented for consideration, the writ is granted, in part, and denied, in part.

## I.

### FACTUAL AND PROCEDURAL HISTORY

In the 2016 April term of court, a grand jury indicted Mr. Rankin on eight felony counts of sexual assault in the third degree, and eight felony counts of sexual abuse

---

[1]The trial judge that entered the order, the Honorable John C. Yoder, died while this case was pending. The issue presented in this case is not mooted by the death of Judge Yoder. *See* Syl. pt. 4, in part, *Tennant v. Marion Health Care Found., Inc.*, 194 W. Va. 97, 459 S.E.2d 374 (1995) ("Once a trial judge rules on a motion *in limine*, that ruling becomes the law of the case unless modified by a subsequent ruling of the court."). Governor Jim Justice has appointed the Honorable Debra MH McLaughlin to replace Judge Yoder.

[2]We follow our traditional practice in cases involving children and sensitive facts and do not use the name of the victim. *See State v. Roy*, 194 W. Va. 276, 280 n.2, 460 S.E.2d 277, 281 n.2 (1995).

by a parent, guardian, or person in position of trust to a child. The crimes allegedly took place between June 12, 2015, and July 17, 2015. The victim, M.Y., was fourteen years old at the time. Mr. Rankin was about fifty years old. M.Y.'s mother and Mr. Rankin had a romantic relationship for an undisclosed period of time. At some point after that relationship ended, Mr. Rankin expressed an interest in renewing his friendship with M.Y. and her mother.[3] It was after this overture that M.Y. was permitted to stay at Mr. Rankin's residence on several occasions between June 12, 2015, and July 17, 2015.

M.Y. first disclosed the sexual relationship with Mr. Rankin to a family friend with whom she was staying while her mother was on her honeymoon. The family friend reported the matter to M.Y.'s mother. The mother promptly reported the matter to the police. The police launched an investigation that included an interview of M.Y. During the interview, M.Y. stated that she had engaged in consensual sex with Mr. Rankin between eight and twelve times. M.Y. also informed the police that, because the first encounter had been unprotected sex, Mr. Rankin purchased her a "Plan B" emergency contraceptive pill to prevent her from getting pregnant.[4] The police obtained cell phone records of M.Y. and Mr.

---

[3]At the time, M.Y.'s mother was seeing another man. She married the man on or about July 24, 2015.

[4]*See State v. Bledsoe*, No. W2012-01643-CCA-R3-CD, 2013 WL 3968780, at *8 n.3 (Tenn. Crim. App. July 31, 2013) ("A Plan B pill is used to prevent pregnancy following unprotected intercourse or contraceptive failure." (internal quotations and citation omitted)).

(continued...)

Rankin. Those records revealed conversations between them on a social media messenger app called "KiK." The messenger app disclosed M.Y. and Mr. Rankin texting numerous times that they loved each other. The messenger app also revealed them making remarks about their anatomy. In one conversation, M.Y. stated to Mr. Rankin "I think my mother would be okay with me exploring my sexual desires with you to be honest."

After Mr. Rankin was arrested, he was interviewed by the police. During that interview, he admitted to spending time with M.Y. but denied ever having a sexual relationship with her. Mr. Rankin admitted to purchasing the Plan B pill for M.Y., explaining that she asked him to purchase it because she had had unprotected sex with someone else. Mr. Rankin provided no explanation when asked why M.Y. would accuse him of engaging in sex with her on numerous occasions.

Subsequent to Mr. Rankin's indictment, he filed two motions seeking to introduce evidence of M.Y.'s sexual history. In the first motion, Mr. Rankin sought to introduce evidence that M.Y. accused another man of sexual assault when she was eleven years old.[5] Mr. Rankin contended in the first motion that this evidence was critical because

---

[4](...continued)

[5]The defendant in that case was indicted on several sexual assault and abuse charges. The defendant ultimately entered a plea of no contest to sexual assault in the third
(continued...)

3

M.Y. had asked him to physically harm that defendant if his prosecution did not go her way. Mr. Rankin asserted further that he refused to agree to the request and that, as a result of his refusal, M.Y. retaliated by falsely accusing him of sexual assault.

In the second motion, Mr. Rankin sought to introduce evidence of M.Y.'s sexual history as it related to the Plan B pill. The State opposed both motions on the ground that Rule 412 of the West Virginia Rules of Evidence prohibited the introduction of such evidence. The trial court ruled, as to the first motion, that if Mr. Rankin took the stand to testify he could introduce evidence involving M.Y.'s sexual assault claims when she was eleven years old. As to the second motion, the trial court ruled that Mr. Rankin could cross-examine M.Y. about whether she told him she had engaged in sex with anyone during the seventy-two hour period prior to the purchase of the Plan B pill.

The State filed the instant proceeding to prohibit enforcement of the circuit court's order permitting Mr. Rankin to introduce of evidence M.Y.'s sexual history.

---

[5](...continued)
degree on July 12, 2016. The defendant was sentenced to one to five years in prison for sexually assaulting M.Y.

## STANDARD OF REVIEW

In this case, the State seeks a writ of prohibition to prevent enforcement of a pretrial order of the circuit court. There are limited instances in which the State may seek a writ of prohibition in a criminal matter. We have held that

> [t]he State may seek a writ of prohibition in this Court in a criminal case where the trial court has exceeded or acted outside of its jurisdiction. Where the State claims that the trial court abused its legitimate powers, the State must demonstrate that the court's action was so flagrant that it was deprived of its right to prosecute the case or deprived of a valid conviction. In any event, the prohibition proceeding must offend neither the Double Jeopardy Clause nor the defendant's right to a speedy trial. Furthermore, the application for a writ of prohibition must be promptly presented.

Syl. pt. 5, *State v. Lewis*, 188 W. Va. 85, 422 S.E.2d 807 (1992), *superseded by statute on other grounds as recognized in State v. Butler*, 239 W. Va. 168, 799 S.E.2d 718 (2017). In Syllabus point 4 of *State ex rel. Hoover v. Berger*, 199 W. Va. 12, 483 S.E.2d 12 (1996), we set forth the following standard for issuance of a writ of prohibition:

> In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5)

5

whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

With the foregoing in mind, we turn to the issues presented.

## III.

## DISCUSSION

In this proceeding we are called upon to address two issues. First, we are asked to decide if the circuit court properly ruled that Mr. Rankin *could* testify about M.Y.'s sexual assault claims against another defendant when she was eleven years old. Second, we have been asked to determine whether the circuit court correctly found that Mr. Rankin *could* cross-examine M.Y. about her sexual history seventy-two hours before the purchase of the Plan B pill. We will address each issue separately below.

### A. *Evidence about a Prior Sexual Assault of the Victim*

The first issue presented involves the circuit court's ruling that Mr. Rankin could testify about M.Y.'s sexual history with another person when she was eleven years old. The State argues that admission of this evidence violates the rape shield law as set fourth

under Rule 412 of the West Virginia Rules of Evidence.[6]  Mr. Rankin contends, and the circuit court found, that the evidence was necessary for him to present a defense.  We disagree.

Rule 412(a) sets out a general prohibition on introducing the sexual history of a victim of sexual crimes. Rule 412(a) provides as follows:

> (a) *Prohibited Uses*. –  The following evidence shall not be admissible in a civil or criminal proceeding involving alleged sexual misconduct:
>
> (1) evidence offered to prove that a victim engaged in other sexual behavior;
>
> (2) evidence offered to prove a victim's sexual predisposition; or
>
> (3) evidence of specific instances of the victim's sexual conduct, opinion evidence of the victim's sexual conduct and reputation evidence of the victim's sexual conduct in any prosecution in which the victim's lack of consent is based solely on the incapacity to consent because such victim was below a critical age, mentally defective, or mentally incapacitated.

The function of the Rule has been stated as follows:

> Rule 412 has two primary underlying functions. The first function is to promote the reporting of sexual assaults and other sexual misconduct by victims, by vitiating their fear that in

---

[6]*See* Syl. pt. 3, *State v. Varlas*, 237 W. Va. 399, 787 S.E.2d 670 (2016) ("Rule 412 of the West Virginia Rules of Evidence provides the standard for the introduction at trial of a victim's sexual history, and it supersedes W. Va. Code § 61-8B-11 [1986] to the extent that the statute is in conflict with the rule.").

7

reporting the incident they will be opening up their private life to be put on display through the course of discovery and at trial. The rule's second function seeks to combat the sexual stereotyping of victims, *i.e.*, to prevent the jury from subverting the substantive law of rape by making the guilt of the defendant turn on the jury's assessment of the moral worth of the victim.

1 Louis J. Palmer, Jr., Robin Jean Davis, and Franklin D. Cleckley, *Handbook on Evidence for West Virginia Lawyers*, § 412.02[1], at 543 (6th ed. 2015) (internal citations and quotations omitted) (footnotes omitted). *See also State v. Varlas*, 237 W. Va. 399, 407, 787 S.E.2d 670, 678 (2016) ("The primary purpose of Rule 412 is to safeguard the alleged victim against the invasion of privacy, potential embarrassment and sexual stereotyping that is associated with public disclosure of intimate sexual details and the infusion of sexual innuendo into the factfinding process." (internal quotations and citation omitted)).

Here, the State has specifically relied upon Rule 412(a)(1) and 412(a)(3). That is, the State argues that Mr. Rankin's proposed testimony is prohibited by Rule 412(a)(1) because it would constitute evidence offered to prove that the victim engaged in other sexual behavior, and by Rule 412(a)(3)(2) because it would constitute evidence of a specific instance of the victim's sexual conduct when she was below the age of consent. The circuit court's order summarily cited to all of the provisions under Rule 412(a). We must interpret the circuit court's treatment of Rule 412(a) as an implicit finding that testimony by Mr. Rankin, regarding M.Y.'s sexual history when she was eleven, was prohibited under the rule.

8

We agree with the State that Rule 412(a)(1) and Rule 412(a)(3) prohibit the testimony Mr. Rankin seeks to introduce. Mr. Rankin seeks to inform the jury that M.Y. had a sexual relation with a man when she was eleven years old. This evidence strikes at the heart of what Rule 412(a)(1) and Rule 412(a)(3) are designed to prevent from being introduced at a trial. *See United States v. Bordeaux*, 400 F.3d 548, 558 (8th Cir. 2005) (noting that "the purpose of [Rule 412(a)] is to protect the alleged victims of sexual assault from harassment or embarrassment"); *United States v. Gardner*, No. 16-cr-20135, 2016 WL 5404207, at *2 (E.D. Mich. Sept. 28, 2016) ("MV-1 was under 18 in October 2015, and thus qualifies as an underage victim to whom Rule 412's protections are especially important."); *People v. Arenda*, 416 Mich. 1, 13, 330 N.W.2d 814, 818 (1982) ("These children and others are the ones who are most likely to be adversely affected by unwarranted and unreasonable cross-examination into these areas. They are among the persons whom the [rape shield] statute was designed to protect."). Indeed, in the context of this case "[t]here is nothing more intimate than childhood sexual abuse, and nothing as potentially devastating to a [victim] than to have that abuse publicly exposed." Andrea A. Curcio, *Rule 412 Laid Bare: A Procedural Rule That Cannot Adequately Protect Sexual Harassment Plaintiffs from Embarrassing Exposure*, 67 U. Cin. L. Rev. 125, 155-56 (1998).

9

In this proceeding, Mr. Rankin relied upon an exception to the prohibitions of Rule 412(a). Rule 412(b)(1) delineates the exceptions to the prohibitions contained in Rule 412(a). It is provided under Rule 412(b)(1) that:

The court may admit the following evidence in a criminal case:

(A) evidence of specific instances of a victim's sexual behavior, if offered to prove that someone other than the defendant was the source of semen, injury, or other physical evidence;

(B) except as provided in (a)(3), evidence of specific instances of a victim's sexual behavior with respect to the person accused of the sexual misconduct, if offered by the defendant to prove consent or if offered by the prosecutor;

(C) evidence of specific instances of the victim's sexual conduct with persons other than the defendant, opinion evidence of the victim's sexual conduct and reputation evidence of the victim's sexual conduct solely for the purpose of impeaching credibility, if the victim first makes his or her previous sexual conduct an issue in the trial by introducing evidence with respect thereto; and

(D) evidence whose exclusion would violate the defendant's constitutional rights.

The circuit court's order did not cite to any specific provision under Rule 412(b)(1) as the basis for admitting evidence that M.Y. was sexually assaulted at age eleven. However, the record clearly shows that Mr. Rankin argued below the constitutional exception contained in Rule 412(b)(1)(D).[7] Insofar as Mr. Rankin and the State addressed Rule 412(b)(1)(D)

---

[7]Mr. Rankin's pleadings below, and his argument during the hearing, indicated
(continued...)

below and in this proceeding, we will address the matter as the basis for the circuit court ruling admitting evidence of the prior sexual assault of M.Y.[8]

Under Rule 412(b)(1)(D), a criminal defendant may introduce evidence prohibited under Rule 412(a) if the exclusion would violate the defendant's constitutional rights. *See* Syl. pt. 3, in part, *State v. Jenkins*, 195 W. Va. 620, 466 S.E.2d 471 (1995) (holding that "a trial judge may not make an evidentiary ruling which deprives a criminal defendant of certain rights, such as the right . . . to offer testimony in support of his or her defense . . . , which [is] essential for a fair trial pursuant to the due process clause found in the Fourteenth Amendment of the Constitution of the United States and article III, § 14 of the West Virginia Constitution."). Our test for determining whether a defendant has a

---

[7](...continued)
that he was relying on the exception contained in Rule 412(b)(1)(D). The State correctly summarized the matter during the hearing as follows: "Now, there is a potential exception if you read down further under Rule 412(b)(1) Subsection D, which [Defense counsel] cited, there's an exception where evidence [excluded] would violate the defendant's constitutional rights[.]"

[8]The circuit court's order cited only to the "manifest injustice" provision contained in Rule 412(c)(2)(B). We interpret the circuit court's order, based upon arguments made by the parties below, as applying the "manifest injustice" standard once it determined that a constitutional violation occurred under Rule 412(b)(1)(D). Because of our ultimate ruling under Rule 412(b)(1)(D), we need not reach the circuit court's application of the "manifest injustice" provision contained in Rule 412(c)(2)(B). *See* 1 Louis J. Palmer, Jr., Robin Jean Davis, and Franklin D. Cleckley, *Handbook on Evidence for West Virginia Lawyers* § 412.05[3][c], at 577 (6th ed. 2015) (discussing the possible problems in applying the "manifest injustice" standard under Rule 412(c)(2)(B) in conjunction with the exceptions in Rule 412(b)(1)).

11

constitutional right to admit evidence that is not permitted under the rape shield law was set

out in Syllabus point 6 of *State v. Guthrie*, 205 W. Va. 326, 518 S.E.2d 83 (1999), in part,

as follows:

> The test used to determine whether a trial court's exclusion of proffered evidence under our rape shield law violated a defendant's due process right to a fair trial is (1) whether that testimony was relevant; (2) whether the probative value of the evidence outweighed its prejudicial effect; and (3) whether the State's compelling interests in excluding the evidence outweighed the defendant's right to present relevant evidence supportive of his or her defense.[9]

(Footnote added). The State has argued that Mr. Rankin's proposed testimony should not be

admitted based upon the second and third factors under the *Guthrie* test. In our review of the

evidence, we find it was not relevant and therefore fails to satisfy the first factor under the

*Guthrie* test.

---

[9]The *Guthrie* test was developed under the rape shield law that existed prior to the adoption of Rule 412 in 2014. The test, however, still is workable for a constitutional challenge under Rule 412(b)(1)(D). *See State v. Timothy C.*, 237 W. Va. 435, 444, 787 S.E.2d 888, 897 (2016) (applying the *Guthrie* test). Mr. Rankin contends that *Guthrie* is inapplicable because it applies only when a trial court excludes, not admits, evidence a defendant seeks to introduce. We disagree. The wording of the test under *Guthrie* simply acknowledges that the issue generally is brought by defendants. However, this recognition by the test does not preclude its use in the rare case when the State seeks a writ to prevent admission of evidence in violation of the rape shield law.

12

Rule 402 of the West Virginia Rules of Evidence expressly states that "[i]rrelevant evidence is not admissible."[10] "This ceiling on admissibility is not to be taken lightly. Evidence that is not relevant, by definition, cannot be offered for a proper purpose[.]" 1 Palmer, Davis, & Cleckley, *Handbook on Evidence*, § 402.04, at 274. For this reason, it is generally recognized that "[a] defendant's constitutional right to present a defense does not extend to irrelevant . . . evidence." *State v. Gipson*, 191 Wash. Ct. App. 780, 786, 364 P.3d 850, 853 (2015). *See also United States v. Perez*, 662 F. App'x 495, 496 (9th Cir. 2016) ("[T]he Constitution does not require the admission of the victim's sexual history, which would serve no purpose other than to play on social prejudices surrounding sexual activity[.]"); *Jackson v. Norris*, 651 F.3d 923, 926 (8th Cir. 2011) ("Jackson's constitutional right to present a defense was not impaired, because that right does not extend to the introduction of irrelevant evidence.")*; United States v. Thompson*, 178 F. Supp. 3d 86, 91 (W.D.N.Y. 2016) ("[T]he Due Process Clause does not give a criminal defendant the right to introduce irrelevant evidence."); *State v. Calderon*, 220 So. 3d 830, 837 (La. Ct. App. 2017) (holding "a defendant's right to present a defense does not require a trial court to permit the introduction of evidence that is irrelevant"). Consequently, *Guthrie* requires a threshold showing that evidence contravening the rape shield law must be relevant. *See* 2 Stephen A. Saltzburg, Michael M. Martin, and Daniel J. Capra, *Federal Rules of Evidence*

---

[10]*See* W. Va. R. Evid. Rule 401 ("Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action.").

*Manual*, § 412.02[3], at 412-6 (11th ed. 2015) ("[T]he constitutional right to an effective defense does not guarantee that defendants can introduce whatever evidence they might desire.").

In the instant case, Mr. Rankin contends that M.Y. falsely accused him of the sexual crimes of which he was charged. In order to establish the falsity of the allegations, Mr. Rankin seeks to show that M.Y. had a motive to falsely accuse him. To do this, Mr. Rankin seeks to show that he had a conversation with M.Y. concerning the defendant who sexually assaulted her when she was eleven years old. At the time of this purported conversation, the defendant in that case was indicted, but not yet tried. Mr. Rankin asserts that M.Y. asked him to physically harm the defendant if things did not go her way at the defendant's trial. Mr. Rankin claims that he refused to agree to harm the defendant. Mr. Rankin now argues that M.Y. falsely accused him of sexual assault in retaliation for his refusal to agree to harm the defendant.[11] Consequently, Mr. Rankin further asserts that the trial court was correct in finding this evidence could be presented during his direct testimony.[12] We disagree.

---

[11]Mr. Rankin also argued below that M.Y. retaliated against him because he rebuffed her sexual advances toward him. The circuit court's order did not permit testimony on this issue.

[12]Mr. Rankin also argued below that he had a constitutional right to cross-examine M.Y. about her sexual history. The circuit court's order rejected this argument in part. The circuit court's order indicated that if M.Y. introduced evidence about her sexual

(continued...)

14

The record is clear. M.Y. was previously sexually assaulted when she was eleven years old. The perpetrator was convicted and sentenced to prison. The facts of that crime have no relevancy in the prosecution of Mr. Rankin. *See United States v. Elbert*, 561 F.3d 771, 777 (8th Cir. 2009) (holding that because minor victims could not legally consent to sex trafficking, evidence of their prior sexual behavior was irrelevant and its exclusion did not violate the defendant's Fifth Amendment due process rights); *State v. Breaux*, No. 2011 KA 0015, 2011 WL 6141636, at *11 (La. Ct. App. Dec. 8, 2011) (Hughes, J., dissenting) ("It makes no sense to think of a five year old as having 'past sexual behavior.' Anything that occurs with a five year old would obviously not be consensual and would constitute a crime."); *State v. Mercado-Vasquez*, 166 Or. App. 15, 23, 998 P.2d 743, 747 (2000) ("A conclusion that a child victim has had "sexual relationships," . . . amounts to nothing more than a conclusion that the child has been a victim of sex crimes in the past."). It has been correctly noted that a "larger purpose [of rape shield laws] is to protect rape victims from the trauma caused by the review of past sexual experiences, and this protection is especially needed in cases involving minor victims." *State v. Townsend*, 366 Ark. 152, 159-60, 233 S.W.3d 680, 686 (2006). *See also* 2 Saltzburg, Martin & Capra, *Evidence Manual*, §

<hr />

[12](...continued) history when she was eleven years old during her direct testimony, Mr. Rankin would then be allowed to cross-examine her on the matter. This ruling is not before us in this proceeding.

412.02[3], at 412-9 ("There is clearly a legitimate interest in protecting the victim from the trauma of having to relate or address prior sexual activity during the trial.").

In an effort to try to make the irrelevant facts of the prior sexual assault of M.Y. relevant, Mr. Rankin has made an uncorroborated assertion that M.Y. falsely accused him because he refused to physically harm the person who sexually assaulted her when she was eleven years old. The facts of how the prosecution of Mr. Rankin began clearly reveal that his uncorroborated assertion lacks merit.

The record indicates that M.Y. did not initiate the investigation of Mr. Rankin by the police. M.Y. revealed to a family friend that she was having a relationship with Mr. Rankin. According to the State's brief, M.Y. informed the family friend that Mr. Rankin was "like a father to her, and that their sexual relationship was something she wanted and desired." The family friend informed M.Y.'s mother of the conversation she had with M.Y. Thereafter, it was M.Y.'s mother who reported the matter to the police and caused the investigation to occur. This uncontested chain of events simply does not reveal a retaliatory motive by M.Y. – it reveals a mother reporting her adolescent daughter was the victim of sexual assault once again.[13] In view of these facts, we find that Rule 412(b)(1)(D) did not

---

[13]During M.Y.'s interview with the police, she characterized her sexual encounter with Mr. Rankin as consensual.

16

allow Mr. Rankin to present irrelevant evidence as a defense to the jury. *See Varlas*, 237 W.

Va. at 409, 787 S.E.2d at 680 (Benjamin, J., dissenting) ("The rule ensures that juries hear

a legitimate defense, rather than a defense of distraction.").

A case that supports our conclusion is *United States v. Payne*, 944 F.2d 1458

(9th Cir. 1991). In *Payne*, the defendant was convicted of sexually assaulting a twelve year

old victim – his foster daughter. One of the issues raised on appeal concerned the district

court's ruling that the defendant could not introduce evidence that he had previously caught

the victim engaged in sexual conduct with another child. The defendant allegedly punished

the victim for this conduct. The defendant wanted to introduce evidence of the victim's prior

sexual conduct and the punishment he inflicted upon her in order to show that the victim was

motivated to falsely accuse him in retaliation for the punishment. The district court ruled that

the defendant could inform the jury that he once punished the child, but that he could not

inform the jury of the reason for the punishment. The appellate court agreed with the district

court as follows:

> We find that evidence of the trailer incident [where the victim
> was alleged to have engaged in sexual conduct] is minimally (if
> at all) probative of Payne's claim of bias. [The victim's] first
> reporting that Payne had molested her occurred more than seven
> months after the trailer incident and resulting discipline, and
> almost as long after [the victim] had left the Paynes' home.
> Moreover, to the extent that the trailer incident had probative
> value on the question of [the victim's] bias, that value was
> protected by the trial court's permitting Payne to conduct a
> "sanitized cross-examination" about the trailer incident, which

17

apprised the jury that [the victim] had been disciplined by Payne as a result of the incident, but did not reveal the nature of the incident. *The underlying facts of the incident simply were not relevant to [the victim's] purported motivation to fabricate the charges*. Thus, the trial court did not abuse its discretion in excluding the evidence and the exclusion did not violate the confrontation clause.

*Payne*, 944 F.2d at 1469 (emphasis added).[14]

Mr. Rankin has also argued that the rape shield law does not apply, because he "is not seeking to introduce evidence of M.Y.'s prior incident of sexual abuse to imply promiscuity[.]" Mr. Rankin relies upon the decision in *State v. Jonathan B*., 230 W. Va. 229, 737 S.E.2d 257 (2012), to support his contention that the rape shield law does not apply to the evidence he seeks to introduce. The defendant in *Jonathan B*. was convicted of second degree sexual assault, incest, and other offenses. On appeal, the defendant argued that the trial court erred in applying the rape shield law to preclude evidence found in a notebook purportedly created by the victim after the rape, in which she described her only sexual encounters as being with a person other than defendant. We agreed with the defendant that the evidence was not prohibited by the rape shield law.[15]

---

[14]We note that, unlike the facts in *Payne*, Mr. Rankin has not asked to simply inform the jury that M.Y. was retaliating against him for refusing to physically harm someone.

[15]The decision in the case was decided under the rape shield statute, W. Va. Code § 61-8B-11.

We find that the notebook is relevant evidence for the purpose of evaluating M.B.'s credibility. In the notebook, which Jonathan B. asserts was written after the alleged rape, M.B. stated that she had only ever had sexual intercourse with one person: "Chris." As noted *supra*, in this case, where the State's case relies almost completely on the testimony of M.B., the evidence is highly probative for Jonathan B.'s defense because the notebook was supposedly created after the alleged rape occurred. The prejudicial value of the evidence is low, as the purpose of admitting the evidence is not to imply promiscuity, but to attack M.B.'s credibility. In this way, the evidence is not of the type the Rape Shield statute was intended to exclude. In sum, we find that the balance of interests in this case weighs in favor of Jonathan B., and therefore, the evidence is admissible, subject to proper authentication.

*Jonathan B*., 230 W. Va. at 240-41, 737 S.E.2d at 268-69. One simple fact distinguishes the evidentiary issue resolved in *Jonathan B*. from the evidentiary issue presented by Mr. Rankin. In *Jonathan B*. we determined that the evidence sought to be admitted was relevant. In the instant proceeding, we have determined that the evidence Mr. Rankin seeks to introduce is not relevant. Consequently, Mr. Rankin cannot rely upon *Jonathan B*.

In view of the foregoing, the State is entitled to the writ of prohibition as it relates to the issue of M.Y. being a victim of sexual assault at the age of eleven.

### *B  Evidence about the Victim's Sexual History Seventy-Two Hours Before the Purchase of a Plan B Pill*

The next issue raised involves the State's intent to introduce a statement made by Mr. Rankin concerning his purchase of the Plan B pill for M.Y. As a result of this, the

circuit court ruled that during Mr. Rankin's cross-examination of M.Y., he would be permitted to ask her whether she told him she had engaged in sex with anyone else within the seventy-two hour period prior to his purchase of the Plan B pill for her.[16] The State contends that this evidence is prohibited by Rule 412(a)(3). Mr. Rankin argues that this evidence is permitted under the exception contained in Rule 412(b)(1)(C).

The State is correct in arguing that, under Rule 421(a)(3), evidence of specific instances of a victim's sexual conduct is prohibited. Mr. Rankin is also correct in pointing out that Rule 412(b)(1)(C) permits evidence of specific instances of a victim's sexual conduct when the victim is the first to introduce evidence regarding the same.[17] The question we must resolve is whether Rule 412(b)(1)(C) supports the circuit court's ruling.[18]

As previously stated, Rule 412(b)(1(C) is an exception under the rape shield law which permits a defendant to introduce "evidence of specific instances of the victim's

---

[16]The ruling did not permit Mr. Rankin to "pursue the matter any further or offer extrinsic evidence of her sexual conduct."

[17]Rule 412(b)(1)(C) specifically references to evidence introduced by the "victim." It has been noted that the term "victim" under the rule should be construed "to mean the 'prosecution,' and that any relevant rebuttal evidence is admissible despite the manner in which it was opened up by state witnesses." 1 Palmer, Davis, & Cleckley, *Handbook on Evidence*, § 412.04[2][c], at 563.

[18]The circuit court's order did not expressly cite to Rule 412(b)(1)(C). However, its ruling is implicitly based upon this rule.

sexual conduct with persons other than the defendant . . . , if the victim first makes his or her previous sexual conduct an issue in the trial by introducing evidence with respect thereto."[19] This is the first opportunity we have had to determine how this rule should be applied.

The purpose of Rule 412(b)(1)(C) is to prevent the State from selectively introducing evidence of a victim's sexual history, and denying the defendant the right to rebut such evidence. The rule appears to express the concern that is found in the curative admissibility rule. *See United States v. Rucker*, 188 F. App'x 772, 778 (10th Cir. 2006) ("'Opening the door' is also referred to as the doctrine of 'curative admissibility.'"). We have noted that "the curative admissibility rule comes into play when irrelevant evidence is introduced without objection and the opponent seeks to introduce rebuttal evidence that is also irrelevant." *State v. McKinley*, 234 W. Va. 143, 157, 764 S.E.2d 303, 317 (2014) (internal quotations and citation omitted). It has been said that the rule "does not permit a party to introduce inadmissible evidence merely because the opponent brought out some evidence on the same subject. The rule is merely protective and goes only as far as is necessary to shield a party from adverse inferences." *People v. Manning*, 182 Ill. 2d 193, 216-17, 695 N.E.2d 423, 433-34 (1998). This Court set out guidelines for the application of

---

[19]"This provision is not contained in the federal counterpart. Rule 412(b)(1)(C) was taken from the rape shield statute, W. Va. Code § 61-8B-11." Palmer, Davis, & Cleckley, *Handbook on Evidence*, § 412.04[2][c], at 562.

21

the curative admissibility rule in Syllabus point 10 of *State v. Guthrie*, 194 W. Va. 657, 461

S.E.2d 163 (1995):

> The curative admissibility rule allows a party to present otherwise inadmissible evidence on an evidentiary point where an opponent has "opened the door" by introducing similarly inadmissible evidence on the same point. Under this rule, in order to be entitled as a matter of right to present rebutting evidence on an evidentiary fact: (a) The original evidence must be inadmissible and prejudicial, (b) the rebuttal evidence must be similarly inadmissible, and (c) the rebuttal evidence must be limited to the same evidentiary fact as the original inadmissible evidence.

We believe that the purpose of Rule 412(b)(1)(C) is consistent with the curative admissibility rule. Therefore, we hold that, in order to rebut evidence on an evidentiary fact under Rule 412(b)(1)(C) of the West Virginia Rules of Evidence, (1) the original evidence must be inadmissible under Rule 412; (2) the rebuttal evidence must be similarly inadmissible; and (3) the rebuttal evidence must be limited to the same evidentiary fact as the original inadmissible evidence. We now apply this test to the facts under consideration.

Mr. Rankin gave a recorded statement to the police wherein he stated that he purchased a Plan B pill for M.Y. because she informed him that she had unprotected sex with someone else. The State informed the circuit court that it was going to introduce the recorded statement in full at trial. Although the State was only interested in letting the jury know that Mr. Rankin purchased the Plan B pill for M.Y., it was also willing to have the jury

22

hear Mr. Rankin allege that M.Y. had unprotected sex with someone else.[20]  As a result of

the State's decision to introduce the full statement, the circuit court permitted Mr. Rankin to

ask M.Y. whether she told him she had sex with someone else during the seventy-two hour

period before he purchased the Plan B pill.  This question was deemed necessary and

permissible because  the jury could infer that the State only introduced the statement because

it was false. Consequently, the circuit court determined that Mr. Rankin had a right to rebut

this adverse inference by asking M.Y., in essence, to affirm or deny the truth of his statement.


Applying the above facts to the test we have developed, we find that, under the

first factor of our test, it is clear that the State's introduction of part of Mr. Rankin's

statement, that M.Y. had unprotected sex with someone else, is inadmissible under Rule

412(a)(3). *See State v. Wenthe*, 865 N.W.2d 293, 306-07 (Minn. 2015) ("The rape-shield law

applies equally to evidence offered by the prosecution and the defense.").  As to the second

factor, it is equally clear that Rule 412(a)(3) prohibits Mr. Rankin from asking M.Y. whether

she told him she had sex with someone else within the seventy-two hour period prior to his

purchase of the Plan B pill for her.  Finally, under the third factor of the test, the single

---

[20]We have found nothing in the record to show that the State attempted to have
the trial court permit it to redact that part of Mr. Rankin's statement that alleged M.Y. stated
she needed the Plan B pill because of sexual conduct with someone else.  *See State v.
Marenkovic*, No. 11-1764, 2013 WL 1501426 (W. Va. April 12, 2013) (where the State
avoided the statutory version of Rule 412(b)(1)(C) by redacting a statement that would have
opened the door for the defendant to present evidence of the sexual history of the victim).
We make no ruling on whether such a redaction would be proper.

23

question that Mr. Rankin is permitted to ask is limited to the inadmissible evidence the State seeks to introduce.

As a result of our analysis, it is clear that the State seeks to introduce inadmissible evidence and that Mr. Rankin should be permitted to rebut that evidence with inadmissible evidence as authorized by the circuit court. *See Docekal v. State*, 929 So. 2d 1139, 1143 (Fla. Dist. Ct. App. 2006) (holding that it is reversible error to prohibit a defendant from cross-examining a victim regarding her past sexual history when she presented statements that opened the door to this evidence). Consequently, we deny the State's request to prohibit enforcement of that part of the circuit court's order that permitted Mr. Rankin to ask M.Y., on cross-examination, whether she told him she had sex with someone else during the seventy-two hour period before he purchased the Plan B pill for her. Under the circuit court's ruling, Mr. Rankin is required to accept M.Y.'s response of "yes" or "no" without further questioning in this area.

## IV.

## CONCLUSION

We prohibit enforcement of that part of the circuit court's order allowing Mr. Rankin to introduce evidence that M.Y. accused another man of sexual assault when she was eleven years old. Furthermore, we deny the State's request to prohibit enforcement of that

part of the circuit court's order permitting Mr. Rankin to cross-examine M.Y. about whether she told him she had sex with anyone else during the seventy-two hour period prior to his purchase of the Plan B pill.

**Writ granted in part and denied in part.**