**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

State of West Virginia,
Plaintiff Below, Respondent,

**v.)  No. 23-195** (Jefferson County CC-19-2021-F-47)

Richard D.,
Defendant Below, Petitioner

# MEMORANDUM DECISION

Petitioner Richard D. appeals the March 11, 2023, sentencing order of the Circuit Court of Jefferson County.[1] On appeal, the petitioner argues that there was insufficient evidence to sustain his convictions, that his sentence was disproportionate, and that the court erred when it denied his motion to impeach the victim, E.R., with evidence that she failed to disclose the petitioner's abuse during a Child Advocacy Center ("CAC") interview in an unrelated case. Upon our review, finding no substantial question of law and no prejudicial error, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21(c).

In 2020, the petitioner briefly resided with thirteen-year-old E.R. and her parents, A.W. and D.R., in Jefferson County, West Virginia. Amanda W. discovered the petitioner kissing E.R. on the upper chest area, and D.R. removed the petitioner from their home. E.R. later disclosed to her counselor, Nichole Hutzler, that she had sexual contact with the petitioner. After being notified of this, D.R. called the police to investigate.

E.R. was referred to the CAC and was interviewed by Ami Sirbaugh, who had previously interviewed her about unrelated sexual incidents with a person named Russell K. E.R. described the progression of sexual incidents between her and the petitioner while he was staying at her home and helping her father with a construction job. Ms. Sirbaugh asked E.R. if "these things had already happened with [the petitioner]" when she was interviewed about Russell K.'s crimes, and E.R. said "[m]ost of it had happened." Ms. Sirbaugh then asked E.R. why she did not tell her about having sexual relations with the petitioner during her first interview, and E.R. responded that she "didn't think that it was important at that time."

In 2021, the petitioner was indicted for four counts of third-degree sexual assault. Before trial, the circuit court ordered the State to disclose records from E.R.'s phone that were previously

---

[1] Petitioner appears by counsel B. Craig Manford. Respondent appears by Attorney General Patrick Morrisey and Deputy Attorney General Andrea Nease Proper. Initials are used where necessary to protects the identities of those involved in this case. *See* W. Va. R. App. P. 40(e).

obtained during its prosecution of Russell K. The court also ordered that neither party could introduce evidence that E.R. "was a previous victim of sexual exploitation" unless the issue was first raised outside the presence of the jury. The petitioner then filed a motion to use E.R.'s initial failure to inform Ms. Sirbaugh of her sexual contact with the petitioner to impeach E.R.'s testimony at trial. The court denied this motion, ruling that E.R.'s sexual conduct with Russell K. fell within the scope of the rape shield law and "the mere fact that [E.R.] did not discuss it at that first interview where the subject of inquiry dealt with the Russell individual" was not proper impeachment material because the interview did not pertain to the petitioner, and E.K. believed that she was in a "consensual relationship" with the petitioner.

At trial, A.W. testified that the petitioner had been a "very close friend" of the family who was staying with them while he helped D.R. build a wheelchair ramp outside her father-in-law's house. A.W. stated that when she saw the petitioner kissing E.R.'s chest, the petitioner stated, "I'm sorry, I forgot how old she was." D.R. testified that, after asking the petitioner to leave, he asked the petitioner why he was kissing E.R., "and all he could tell me was that he was a piece of crap."

The State also presented a stipulation of facts that would have been elicited from Cyndi Leahy, a sexual assault nurse examiner. In the stipulation, Ms. Leahy stated that E.R. reported that "four events of penile penetration were committed by [the petitioner] upon her" in 2020. Ms. Leahy's physical examination neither confirmed nor discounted E.R.'s report.

E.R. testified in detail about four separate occasions that she had sexual intercourse with the petitioner at her home in May and June of 2020. When these incidents occurred, E.R. stated she was thirteen years old, and the petitioner was "about to be" thirty years old. E.R. also confirmed that she disclosed these incidents to Ms. Sirbaugh before trial. Further, E.R. testified that the petitioner was asked to leave her home after her mother saw him kissing E.R.'s chest. E.R. testified that her mother told her father that the petitioner "was sucking on my breast," but the petitioner corrected A.W. "and said that he was not sucking my breast, he was kissing the upper part of my chest which is true."

The petitioner testified that he stayed with E.R. and her family in May and June of 2020, but he denied engaging in sexual intercourse with E.R. The petitioner admitted that A.W. saw him kissing E.R.'s chest, but he denied saying "I'm sorry, I forgot how old she was." The petitioner further admitted that he told D.R. "I know you probably want to punch me. I'm a piece of whatever," but explained that he said this because D.R. thought that he had been "sucking on his daughter's breasts." On cross-examination, the petitioner admitted that, in May and June of 2020, he was twenty-nine years old and E.R. was thirteen years old. During his closing argument, the petitioner argued that it was "unreasonable" to believe that the alleged sexual acts could have occurred in a small home without anyone in the family knowing about it.

The jury convicted the petitioner of four counts of third-degree sexual assault. The circuit court denied the petitioner's motion for a judgment of acquittal, which attacked the credibility of E.R.'s testimony. The court granted the petitioner's motion for a psycho-sexual risk assessment, which was filed with the court. This assessment reflected that the petitioner "would be a fair candidate for probation or home confinement" and recommended "intensive sex offender treatment." The assessment also stated that the petitioner's refusal to take responsibility of the

crimes of conviction was a "limiting factor . . . [that] limits the efficacy of sex offender treatment. However, it is possible that he may overcome his resistance once he is sentenced." The court rejected the petitioner's request for an alternative sentence and sentenced him to four consecutive terms of one to five years of imprisonment. The petitioner appeals from the court's sentencing order.

First, the petitioner argues that the circuit court erred when it denied his motion for judgment of acquittal, and claims that E.R.'s testimony about the circumstances of the sexual assaults was not credible. "The Court applies a de novo standard of review to the denial of a motion for judgment of acquittal based upon the sufficiency of the evidence." *State v. Juntilla*, 227 W. Va. 492, 497, 711 S.E.2d 562, 567 (2011). We have further explained that

> [t]he function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.

Syl. Pt. 1, *State v. Guthrie*, 194 W. Va. 657, 461 S.E.2d 163 (1995). Notably, the petitioner does not contend that the State failed to meet its burden of proof on any element of the crime of third-degree sexual assault but, rather, contends that his convictions are not sustainable because E.R.'s testimony about the circumstances of the assaults was "unreasonable and unbelievable." We have previously held, however, that "[a] conviction for any sexual offense may be obtained on the uncorroborated testimony of the victim, unless such testimony is inherently incredible, the credibility is a question for the jury." Syl. Pt. 5, *State v. Beck*, 167 W. Va. 830, 286 S.E.2d 234 (1981); *see Guthrie*, 194 W. Va. at 663, 461 S.E.2d at 169, Syl. Pt. 3, in part (holding that "[c]redibility determinations are for a jury and not an appellate court."). And motions for acquittal based on the alleged insufficiency of evidence due to incredible testimony should be granted "only when the testimony defies physical laws." *State v. McPherson*, 179 W. Va. 612, 617, 371 S.E.2d 333, 338 (1988). In this case, the jury heard and rejected the petitioner's claim that that it was unlikely that the petitioner could have sexually assaulted E.R. in her home without any family members knowing about it. The record does not reflect—nor does the petitioner assert—that E.R.'s testimony defied physical laws or was inherently incredible. Accordingly, E.R.'s testimony alone was sufficient to support the petitioner's convictions, and he has not met his burden of demonstrating error in the circuit court's rulings on his motions for judgment of acquittal.

Second, the petitioner claims that the circuit court erred when it denied his motion to introduce evidence that E.R. did not mention the petitioner when she was previously interviewed about sexual misconduct by Russell K. The petitioner argues that it was incumbent upon E.R. to disclose the petitioner's sexual assaults during her CAC interview about Russell K., and her failure to do so was relevant because it "casts doubt as to whether or not the alleged crimes against [her] ever occurred."

"The test used to determine whether a trial court's exclusion of proffered evidence under our rape shield law violated a defendant's due process right to a fair trial is (1) whether that testimony was relevant; (2) whether the probative value of the evidence outweighed its prejudicial effect; and (3) whether the State's compelling interests in excluding the evidence outweighed the defendant's right to present relevant evidence supportive of his or her defense." Syllabus point 6, *State v. Guthrie*, 205 W. Va. 326, 518 S.E.2d 83 (1999).

Syl. Pt. 1, *Harvey v. Yoder*, 239 W. Va. 781, 806 S.E.2d 437 (2017). "Rule 412(a) [of the West Virginia Rules of Evidence] sets out a general prohibition on introducing the sexual history of a victim of sexual crimes." *Id.* at 784, 806 S.E.2d at 440. Rule 412(a) provides as follows:

(a) *Prohibited Uses*.—The following evidence shall not be admissible in a civil or criminal proceeding involving alleged sexual misconduct:
(1) evidence offered to prove that a victim engaged in other sexual behavior;
(2) evidence offered to prove a victim's sexual predisposition; or
(3) evidence of specific instances of the victim's sexual conduct, opinion evidence of the victim's sexual conduct and reputation evidence of the victim's sexual conduct in any prosecution in which the victim's lack of consent is based solely on the incapacity to consent because such victim was below a critical age, mentally defective, or mentally incapacitated.

Here, evidence of E.R.'s prior sexual relationship with Russell K. "strikes at the heart of what Rule 412(a)(1) and Rule 412(a)(3) are designed to prevent from being introduced at trial." *See Harvey*, 239 W. Va. at 441, 806 S.E.2d at 441 (citations omitted). As the *Harvey* Court opined, "[t]here is nothing more intimate than childhood sexual abuse, and nothing as potentially devastating to a [victim] than to have that abuse publicly exposed." *Id.* (citation omitted). Although Rule 412(b)(1)(C) provides an exception to the rape shield law in criminal cases that allows a court to admit evidence of a victim's sexual conduct for the purpose of impeaching credibility, this evidence cannot be admitted unless the "victim first makes . . . her previous sexual conduct an issue in the trial by introducing evidence with respect thereto[.]" Because the State did not introduce evidence of E.R.'s previous sexual conduct, the Rule 412(b)(1)(C) exception does not apply in this case.

Regarding the impeachment of trial witnesses, we have held that "[g]enerally, a witness who testifies to certain matters cannot be impeached by showing his or her failure on a prior occasion to disclose a material fact unless the disclosure was omitted under circumstances rendering it incumbent or natural for the witness to state it." Syl. Pt. 2, *State v. Blake*, 197 W. Va. 700, 478 S.E.2d 550 (1996). Under the circumstances of this case, we find no error in the circuit court's determination that it was not incumbent or natural for E.R. to report the petitioner's sexual misconduct where she was being interviewed about a different perpetrator and believed that she was in a consensual relationship with the petitioner.

Finally, the petitioner argues that his sentence is disproportionate to his crimes given the evidence. We review sentencing orders for an abuse of discretion, "unless the order violates statutory or constitutional commands." Syl. Pt. 1, in part, *State v. Lucas*, 201 W. Va. 271, 496

4

S.E.2d 221 (1997). Our analysis of the issues presented by the petitioner is guided by Syllabus Point 4 of *State v. Goodnight*, 169 W. Va. 366, 287 S.E.2d 504 (1982), which provides that "[s]entences imposed by the trial court, if within statutory limits and if not based on some [im]permissible factor, are not subject to appellate review." In this case, the petitioner's sentence for each conviction is within statutory limits. *See* W. Va. Code § 61-8B-5(a)(2)(b) (providing that the sentence for third-degree sexual assault is one to five years of imprisonment). Further, we have explained that impermissible factors to consider in sentencing include "race, sex, national origin, religion, and socioeconomic status . . . ." *State v. Moles*, No. 18-0903, 2019 WL 5092415, at *2 (W. Va. Oct. 11, 2019) (memorandum decision) (citation omitted). The petitioner does not assert any of these factors were considered by the circuit court at sentencing. Because proportionality standards "are basically applicable to those sentences where there is either no fixed maximum set by statute or where there is a life recidivist sentence," neither of which characterizes the petitioner's sentence, a proportionality analysis is not appropriate. Syl. Pt. 4, in part, *Wanstreet v. Bordenkircher*, 166 W. Va. 523, 276 S.E.2d 205 (1981). Accordingly, appellate review of the petitioner's sentence is not available.

Based on the foregoing, this Court affirms the Circuit Court of Jefferson County's March 11, 2023, sentencing order.

Affirmed.

**ISSUED:** January 10, 2025

**CONCURRED IN BY:**

Chief Justice William R. Wooton
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice C. Haley Bunn
Justice Charles S. Trump IV

5